# Exhibit 1

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

Reg. No. 2,120,106

## United States Patent and Trademark Office

Registered Dec. 9, 1997

## TRADEMARK
### PRINCIPAL REGISTER

## WEIGHT WATCHERS

WEIGHT WATCHERS INTERNATIONAL, INC. (VIRGINIA CORPORATION)
175 CROSSWAYS PARK WEST
WOODBURY, NY 11797

FOR: COMPUTER PROGRAMS FOR MANAGING DIET AND NUTRITION, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 12–8–1996; IN COMMERCE 12–8–1996.

SER. NO. 75–277,844, FILED 4–21–1997.

ANGELA M. MICHELI, EXAMINING ATTORNEY

# United States of America
## United States Patent and Trademark Office

# WEIGHT WATCHERS

**Reg. No. 4,084,983**

**Registered Jan. 10, 2012**

WEIGHT WATCHERS INTERNATIONAL, INC. (VIRGINIA CORPORATION)
11 MADISON AVENUE
NEW YORK, NY 10010

**Int. Cl.: 42**

**SERVICE MARK**

FOR: COMPUTER SERVICES, NAMELY, CREATING AN ON-LINE COMMUNITY FOR REGISTERED USERS TO PARTICIPATE IN DISCUSSIONS, GET FEEDBACK FROM THEIR PEERS, FORM VIRTUAL COMMUNITIES, AND ENGAGE IN SOCIAL NETWORKING IN THE FIELD OF WEIGHT MANAGEMENT, IN CLASS 42 (U.S. CLS. 100 AND 101).

**PRINCIPAL REGISTER**

FIRST USE 6-1-2001; IN COMMERCE 6-1-2001.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 856,202 AND 1,395,251.

SN 85-192,475, FILED 12-7-2010.

MICHAEL SOUDERS, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

# United States Patent Office

**856,202**
**Registered Sept. 3, 1968**

## PRINCIPAL REGISTER
### Service Mark

Ser. No. 249,694, filed July 6, 1966

## WEIGHT WATCHERS

Weight Watchers International, Inc. (New York corporation)
99—11 Queens Blvd.
Forest Hills, N.Y.

For: PLANNING, EXECUTING AND SUPERVISING DIET PROGRAMS BY MEANS OF GROUP MEETINGS, COURSES RELATING TO DIET AND NUTRITION, AND THE DISTRIBUTION OF LITERATURE, in CLASS 100 (INT. CL. 42).

First use May 15, 1963; in commerce May 15, 1963.

Int. Cl.: 42

Prior U.S. Cl.: 100

**United States Patent and Trademark Office**
Renewal

Reg. No. 856,202
Registered Sep. 3, 1968
OG Date Dec. 13, 1988

## SERVICE MARK
## PRINCIPAL REGISTER

### WEIGHT WATCHERS

WEIGHT WATCHERS INTERNATION-
AL, INC. (VIRGINIA CORPORATION)
JERICHO ATRIUM
500 NORTH BROADWAY
JERICHO, NY 117532196, BY MERGER
WITH WEIGHT WATCHERS INTER-
NATIONAL, INC. (NEW YORK COR-
PORATION) FOREST HILLS, NY

FOR: PLANNING, EXECUTING AND
SUPERVISING DIET PROGRAMS BY

MEANS OF GROUP MEETINGS,
COURSES RELATING TO DIET AND
NUTRITION, AND THE DISTRIBUTION
OF LITERATURE, IN CLASS 100 (INT.
CL. 42).

FIRST USE 5–15–1963; IN COMMERCE
5–15–1963.

SER. NO. 249,694, FILED 7–6–1966.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Dec. 13, 1988.*

COMMISSIONER OF PATENTS AND TRADEMARKS

Int. Cls.: 41 and 42

Prior U.S. Cls.: 100 and 107

**United States Patent and Trademark Office**

Reg. No. 1,395,251
Registered May 27, 1986

## SERVICE MARK
### PRINCIPAL REGISTER

## WEIGHT WATCHERS

WEIGHT WATCHERS INTERNATIONAL, INC. (VIRGINIA CORPORATION)
800 COMMUNITY DRIVE
MANHASSET, NY 11030

FOR: EDUCATIONAL SERVICES, NAMELY CONDUCTING SEMINARS AND GROUP INSTRUCTION IN THE FIELD OF DIETARY MANAGEMENT; ENTERTAINMENT SERVICES, NAMELY PRODUCTION OF AUDIO/VISUAL PROGRAMS CONSISTING OF INTERVIEWS, RECIPES AND EXERCISE DEMONSTRATIONS, IN CLASS 41 (U.S. CL. 107).

FIRST USE 1-8-1962; IN COMMERCE 5-15-1963.
FOR: PROVIDING DIETARY ADVICE AND/OR DIETARY COUNSELLING SERVICES, IN CLASS 42 (U.S. CL. 100).
FIRST USE 1-8-1962; IN COMMERCE 5-15-1963.
OWNER OF U.S. REG. NOS. 715,515, 903,957 AND OTHERS.

SER. NO. 518,721, FILED 1-23-1985.

RUSS HERMAN, EXAMINING ATTORNEY

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,990,178**

**Registered June 28, 2016**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

WEIGHT WATCHERS INTERNATIONAL, INC. (VIRGINIA CORPORATION)
675 AVENUE OF THE AMERICAS
NEW YORK, NY 10010

FOR: ELECTRONICS, NAMELY, CALCULATORS, PEDOMETERS, DIARIES AND DAY PLANNERS; FOOD AND BODY WEIGHING APPARATUS; COMPUTER SOFTWARE FOR CALCULATING FOOD INTAKE AND PHYSICAL ACTIVITY, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 12-6-2015; IN COMMERCE 12-6-2015.

OWNER OF U.S. REG. NO. 4,397,771.

THE MARK CONSISTS OF THE LETTERS "WW" STACKED ON TOP OF EACH OTHER.

SN 86-677,584, FILED 6-29-2015.

JOHN MUCHA, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

<div style="border:1px solid">

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

</div>

**Requirements in the First Ten Years\***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office
(USPTO). The time periods for filing are based on the U.S. registration date (not the international registration
date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to
those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international
registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the
underlying international registration at the International Bureau of the World Intellectual Property Organization,
under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated
from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal
forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark
owners/holders who authorize e-mail communication and maintain a current e-mail address with the
USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark
Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms
available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,773,260**

**Registered July 14, 2015**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

WEIGHT WATCHERS INTERNATIONAL, INC. (VIRGINIA CORPORATION)
675 AVENUE OF THE AMERICAS
NEW YORK, NY 10010

FOR: ELECTRONICS, NAMELY, CALCULATORS, PEDOMETERS, DIARIES AND DAY PLANNERS; FOOD AND BODY WEIGHING APPARATUS; COMPUTER SOFTWARE FOR CALCULATING FOOD INTAKE AND PHYSICAL ACTIVITY; PRE-RECORDED DVDS FEATURING EXERCISE AND FITNESS INSTRUCTION, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 12-2-2012; IN COMMERCE 12-2-2012.

THE MARK CONSISTS OF THE LETTERS "WW" STACKED ON TOP OF EACH OTHER INSIDE A BOX.

SN 85-755,336, FILED 10-16-2012.

JIM RINGLE, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse)  **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).   The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.   *See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.   *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.   With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

Reg. No. 2,139,767

## United States Patent and Trademark Office

Registered Feb. 24, 1998

### SERVICE MARK
### PRINCIPAL REGISTER

## POINTS

WEIGHT WATCHERS INTERNATIONAL, INC.
(VIRGINIA CORPORATION)
175 CROSSWAYS PARK WEST
WOODBURY, NY 11797

FOR: FOOD NUTRITION CONSULTATION AND ADVICE, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 3–31–1997; IN COMMERCE 8–11–1997.

SN 75–175,791, FILED 10–2–1996.

CATHERINE KAISER KREBS, EXAMINING ATTORNEY

**Int. Cl.: 44**

**Prior U.S. Cls.: 100 and 101**

**United States Patent and Trademark Office**

Reg. No. 3,163,684

Registered Oct. 24, 2006

## SERVICE MARK
### PRINCIPAL REGISTER

# POINTS

WEIGHT WATCHERS INTERNATIONAL, INC. (VIRGINIA CORPORATION)
11 MADISON AVE.
NEW YORK, NY 10010

FOR: PROVIDING WEIGHT REDUCTION PLAN-NING, TREATMENT AND SUPERVISION THROUGH WEIGHT REDUCTION PROGRAMS FEATURING COUNSELING, CREATING DIET RE-GIMES, AND DISCUSSIONS; PROVIDING ADVICE, CONSULTATION AND INFORMATION IN THE FIELD OF WEIGHT CONTROL AND NUTRITION, IN CLASS 44 (U.S. CLS. 100 AND 101).

FIRST USE 8-0-1997; IN COMMERCE 8-0-1997.

THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 2,139,767, 2,432,287, AND OTHERS.

SN 78-494,178, FILED 10-4-2004.

YONG KIM, EXAMINING ATTORNEY

# Exhibit 2



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

///////////////////

# Gut Check: A Reference Guide for Media on Spotting False Weight Loss Claims

**TAGS:**　Advertising and Marketing　|　Health Claims

To help media outlets spot false weight loss representations — "gut check" claims — the FTC has compiled a list of seven advertising claims that are likely to be a tip-off to deception. Take the quiz to see if you can trust your gut to spot them.

Introduction

Weight Loss Advertising Basics

The 7 "Gut Check" Claims



# Introduction

Misleading ads for weight loss products target consumers desperate for results. But let's face it: When it comes to dieting, there are no easy answers.  If a product promises weight loss without effort and sacrifice, it's bogus.

That doesn't stop some marketers from trying to make a quick buck at consumers' expense. What's more, they often use the reputation of respected media outlets as cover.  "It has to be true," consumers conclude. "The ad ran on my favorite channel" – or on the radio, in a national magazine, in a local newspaper, or on a trusted website.

The Federal Trade Commission, the nation's consumer protection agency, has brought hundreds of cases challenging deceptive weight loss claims and will continue their law enforcement efforts. But spotting false claims *before* they're published or aired – and *before* consumers risk their money and perhaps even their health on a worthless product – is something only you can do. That's why the FTC is asking for your help.

Of course, there's no one-size-fits-all way to spot every deceptive weight loss claim, but scientists have established that there are some statements that simply can't be true. In consultation with experts, the FTC has come up with a list of seven representations – we call them "gut check" claims – that media outlets should think twice before running.

How does that work in the day-to-day operation of your business?  Before you run any ad, someone in your company already gives it the once-over to make sure it meets your standards. But if it has one of those seven can't-be-true weight loss claims, it's time for that gut check – a quick second look to make sure you're not getting ready to risk your reputation by running a claim known to be false. Train your sales staff to speak to a supervisor if an ad makes a "gut check" claim.  Of course, just because a claim in a weight loss ad isn't a "gut check" claim doesn't mean it's legitimate. But taking a moment to stop an obviously bogus "gut check" claim should be standard operating procedure in your office.

Why is that "gut check" important? Because:

no legitimate media outlet wants to be associated with fraud. Accuracy is your company's stock in trade. Why sully your good name by being known as a publication or station that promotes rip-offs?

if scammers are willing to cheat consumers, there's a good chance they'll cheat you by not paying their bills. By the time fly-by-nighters have made a quick killing, they've disappeared – and left you holding a stack of worthless receivables.

you want to protect loyal readers, listeners, and viewers from bogus products that can't possibly work as advertised.

reputable advertisers don't want to associate their brands with media outlets used by con artists.

For the most part, the examples we're talking about apply to dietary supplements, including herbal remedies, over-the-counter drugs, as well as patches, creams, wraps, and similar products worn on the body or rubbed into the skin. They don't apply to prescription drugs, meal replacement products, low-calorie foods, surgery, hypnosis, special diets, or exercise equipment.

If you spot a "gut check" claim, take a step back and look at the ad from the point of view of the average consumer. Is it really worth tarnishing your reputation by running a false claim?

# Weight Loss Advertising Basics

It's the law – and it's always been the law – that before companies can run ads for weight loss products, they need scientific proof to support objective claims their ads make.

False or misleading claims can be conveyed in words and in images. Some brazen scammers just flat-out lie. Others use eye-catching before-and-after pictures. A word about consumer endorsements (sometimes called testimonials): Endorsements from supposedly satisfied customers – *"D.G. lost 38 pounds in just 3 weeks"* or *"Jane from Springfield dropped 4 dress sizes in 30 days!"* – are a staple of weight loss ads. Too often, advertisers cherry-pick their best cases or even make up bogus endorsements, deceptively conveying to consumers that they'll get similar results. Under the law, advertisers that choose to use endorsements have two choices: Either the results in the ad must be typical of what other consumers can expect to achieve **or** the ad must clearly and conspicuously disclose what the typical results are.

Even for the most effective products, services, or programs, weight loss of more than a pound a week over a long period is unusual. As a rule, endorsements from people who claim to have lost an average of two pounds or more per week for a month or more – or endorsements from people who say they lost more than 15 pounds overall – should be accompanied by a disclosure of how much weight consumers typically can expect to lose.

What makes a disclosure "clear and conspicuous"? Simply put, it stands out in an ad. It finds you; you don't have to look for it. In general, disclosures should be:

> close to the claims they relate to – for example, consumer testimonials – and not buried in footnotes or blocks of text people aren't likely to read;
>
> in a font that's easy to read;
>
> in a shade that stands out against the background;
>
> for video ads, on the screen long enough to be noticed, read, and understood;
>
> for video or radio ads, read at a cadence that's easy for consumers to follow; and
>
> in words consumers will understand.

If disclosures are hard to find, tough to understand, obscured by other elements in the ad, or buried in unrelated details, they don't meet the "clear and conspicuous" standard. Furthermore, it's not enough to say "results not typical" or "your results will vary."

Although the seven "gut check" claims apply just to dietary supplements, over-the-counter drugs, and products rubbed into the skin or worn on the body, the rules about consumer endorsements apply across the board, including all weight loss products, programs, and services. If an ad features endorsers making weight loss claims that aren't likely to be typical – but there's no disclosure of typical results or the disclosure isn't clear and conspicuous – ask the advertiser to make a good disclosure or show you that the results are typical.

# The 7 Gut Check Claims

To make it easier to spot false weight loss representations – the "gut check" claims – the FTC has compiled a list of seven statements in ads that experts say simply can't be true. If you spot one of these claims in an ad a marketer wants to run in your media outlet, it's likely to be a tip-off to deception.

By the way, several of the "gut check" claims refer to "substantial weight loss." This means "a lot of weight" and includes weight loss of a pound a week for more than four weeks or a total weight loss of more than 15 pounds in any time period. But as the examples illustrate, advertisers can convey that "substantial weight loss" message without using specific numbers. Substantial weight loss can be suggested by reference to dress size, inches, or body fat.

If one of these seven claims crosses your desk, do a gut check.  Consult the appropriate person in your company and think twice before running any ad that says a product:

1. causes weight loss of two pounds or more a week for a month or more without dieting or exercise;

2. causes substantial weight loss no matter what or how much the consumer eats;

3. causes permanent weight loss even after the consumer stops using product;

4. blocks the absorption of fat or calories to enable consumers to lose substantial weight;

5. safely enables consumers to lose more than three pounds per week for more than four weeks;

6. causes substantial weight loss for all users; or

7. causes substantial weight loss by wearing a product on the body or rubbing it into the skin.

Some gutsy con artists may repeat a "gut check" claim verbatim. That's a sure sign that false advertising is afoot. But "gut check" claims can be conveyed in more subtle ways, too. Knowing you'll be on the look-out for specific false claims, some advertisers are careful not to use the exact wording of "gut check" claims.  Others may try to work in limiting phrases that consumers may not catch. For example, they may claim a product "*helps* consumers lose substantial weight without diet or exercise" or that people can take off "*up to* three pounds a week for a month or more."

You can outfox the fraudsters by understanding what makes each of those claims bogus. Fine-tuning your falsity detector will make it easier for you to spot deception when marketers try to slip a false claim past you by paraphrasing or using synonyms.

## CLAIM #1:

Causes weight loss of two pounds or more a week for a month or more without dieting or exercise

**Gut check.** Meaningful weight loss requires taking in fewer calories than you use. It's that simple. But it's also that difficult for people trying to shed pounds. That means ads promising substantial weight loss without diet or exercise are false. And ads suggesting that users can lose weight fast without changing their lifestyles – even without mentioning a specific amount of weight or length of time – are false, too. Some ads might try a subtler approach, say, by referring to change in dress size or lost inches, but the effect is the same. That's why these variations on that claim should fail your gut check:

"I lost 30 pounds in 30 days – and still ate all my favorite foods."

"Lose up to 2 pounds a day without diet or exercise."

"Drop four dress sizes in just a month without changing your eating habits or enduring back-breaking trips to the gym."

"Finally there's FatFoe, an all-natural weight loss compound so powerful, so effective, so relentless in its awesome attack on bulging fatty deposits that it eliminates the need to diet." (Next to the consumer endorsement,  *I lost 36 pounds in 5 short weeks.*")

## CLAIM #2:

Causes substantial weight loss no matter what or how much the consumer eats

**Gut check.** It's impossible to eat unlimited amounts of food – any kind of food – and still lose weight. It's a matter of science: To lose weight, you have to burn more calories than you take in. To achieve success, dieters have to put the brakes on at the dinner table. If an ad says users can eat any amount of any kind of food they want and still lose weight, the claim is false.  That's why these variations on that claim should fail your gut check:

> "Need to lose 20, 30, 40 pounds or more?  Eat your fill of all the foods you crave and watch the weight disappear!"

> "Who needs rabbit food? Enjoy any mouth-watering foods you want anytime you want, and blast away dress sizes and belt notches."

> "This revolutionary product lets you enjoy all your favorites – hamburgers, fries, pasta, sausage, and even gooey desserts – and still lose weight. One FatFoe tablet before meals does the work for you and you'll lose all the weight you want."

## CLAIM #3:

Causes permanent weight loss even after the consumer stops using product

**Gut check.** Without long-term lifestyle changes – like continuing to make sensible food choices and upping the activity level – weight loss won't last once consumers stop using the product. Even if dieters succeed in dropping pounds, maintaining weight loss requires lifelong effort. That's why these variations on that claim should fail your gut check:

> "Take it off and keep it off. Kiss dieting goodbye forever."

> "Thousands of people have used FatFoe and kept the weight off for good."

> "It's not another weight loss gimmick. It's a unique metabolism accelerator that changes how your body burns fat. Why settle for temporary weight loss when you can get rid of those flabby thighs and that unsightly muffin top once and for all."

> "No more yo-yo dieting. Eat more. Weigh less. And finally – yes, finally – stay slim for the rest of your life."

## CLAIM #4:

Blocks the absorption of fat or calories to enable consumers to lose substantial weight

**Gut check.** Without lifestyle changes, no over-the-counter product can block enough fat or calories to cause the loss of lots of weight. To work, even legitimate "fat blockers" must be used with a reduced-calorie diet.  That's why these variations on that claim should fail your gut check:

> "Super Flablock Formula is an energized enzyme that can absorb up to 900 times its own weight in fat.  Relax and enjoy rich favorites like ice cream, butter, and cheese, confident that you'll still blast off  up to 5 pounds per week – or more!"

> "Take a StarchBloxIt tablet before meals. It dissolves into a gel that absorbs excess sugars and carbs, preventing them from forming body fat. Eat what you want and still lose weight."

> "Block fat before your body absorbs it. The pounds and inches will melt away."

## CLAIM #5:

Safely enables consumers to lose more than three pounds per week for more than four weeks

**Gut check.** Medical experts agree: Losing more than three pounds a week over multiple weeks can result in gallstones and other health complications.  So if an ad says dieters can safely and quickly lose a dramatic amount of weight on their own, it's false. That's why these variations on that claim should fail your gut check:

"Take off up to 10 pounds a week safely and effectively. Imagine looking into the mirror two months from now and seeing a slim reflection."

"Even if you have 40, 50, 60 or more pounds to lose, doctors recommend Fat Foe as the no-risk way to blast off the weight and inches in a few short months. Just in time for bikini season or that class reunion."

## CLAIM #6:

Causes substantial weight loss for all users

**Gut check.** People's metabolisms and lifestyles are different. So is how they'll respond to any particular weight loss product. The upshot: No product will cause every user to drop a substantial amount of weight. Any ad that makes a universal promise of success is false. That's why these variations on a claim should fail your gut check:

"Lose excess body fat. You can't fail because no will power is required."

"Lose 10-15-20 pounds. Gelaslim works for everyone, no matter how many times you've tried and failed."

"FatFoe is guaranteed to work for you. Melt away the pounds regardless of your body type or size."

"Maybe you want to drop a dress size before that get-together next month or perhaps you need to take off 50 pounds or more. Your search for a weight loss miracle is over. We've found the diet supplement guaranteed to work 100% of the time – regardless of how much you want to lose."

## CLAIM #7:

Causes substantial weight loss by wearing a product on the body or rubbing it into the skin

**Gut check.** Weight loss is an internal metabolic process. Nothing you wear or apply to the skin can cause substantial weight loss. So weight loss claims for patches, creams, lotions, wraps, body belts, earrings, and the like are false. There's simply no way products like that can live up to what the ads say. That's why these variations on the claim should fail your gut check:

"Ancient healers knew that a metabolism-boosting energy current runs from the earlobe to the stomach, making it easy to shed 30, 40, even 50 pounds. That's the secret behind our Dieter's Earrings.  Why starve yourself when an attractive piece of fashion jewelry can do the weight loss work for you?"

"Rub Melt-X Gel into your problem areas and watch the active ingredient penetrate the skin layers to melt fat at the cellular level.  Use Melt-X around your mid-section to whittle a contoured, streamlined waist.  You'll melt away 20 pounds in just a month."

"Slink into those skinny jeans in no time.  Our patent-pending body wrap will increase the metabolism around your hips to burn fat faster.  You'll lose 2-3 pounds per week just by wearing the body wrap while relaxing.  Blast off 25 pounds in 8 short weeks."

Ready to test your gut reactions?  Take this quiz featuring the kinds of claims advertisers may want to run on your station or in your publication.  Are the representations plausible or do they have the telltale signs of a bogus "gut check" claim?

**January 2014**



ftc.gov

# Exhibit 3



Terri J. Frank
Sr. Vice President and Associate General Counsel
Email: terri.frank@weightwatchers.com

**VIA UPS**

February 16, 2017

Saeju Jeong, CEO
Noom, Inc.
229 West 28th Street
New York, NY 10001

Dear Mr. Jeong:

I write to you on behalf of Weight Watchers International, Inc. ("WWI"), the world's leading provider of weight management services and products and the creator and exclusive owner of all worldwide rights, including without limitation the trademark rights, in and to the famous WEIGHT WATCHERS® trademark and brand name.  Weight Watchers has been ranked by the experts in the 2017 Best Diets rankings by U.S. News & World Report as number 1 in four categories: Best Diet for Weight Loss, Best Commercial Diet, Easiest Diet to Follow, and Best Diet for Fast Weight Loss.  In addition, our approach to weight management is supported by over 70 clinical trials, making our approach one of the most scientifically tested programs in the market.  Weight Watchers provides innovative and technologically advanced digital weight management products through its websites, mobile sites and apps.  Our current program helps members stay motivated and on track by offering skills and techniques in areas such as mindfulness and self-talk.  These skills help individuals cope with thoughts and other triggers that can sabotage their weight loss journey.

As a result, we were quite surprised to discover that you have been posting ads globally on Facebook which read "You aren't still on MySpace, so why are you doing Weight Watchers?"  Additionally, your website located at www.noom.com contains a section entitled "Common questions" which asks "How does Noom compare to Weight Watchers?"  The answer states "Weight Watchers and other similar programs don't tackle the thoughts, triggers, and obstacles that can sabotage your progress", as well as "Plus, we don't want you to stress out about points for the rest of your life."  We note that this false characterization of our program also appears in a recent email sent to prospective subscribers which has as its subject line, "Why Noom is different from Weight Watchers."

Noom, Inc.
February 16, 2017
Page 2

These claims about our program are false and misleading and will likely cause a substantial number of consumers to believe that Weight Watchers is ineffective, obsolete and fails to address obstacles and barriers to losing weight.  As a result, your ads will cause damage to WWI's reputation as well as to the reputation of Weight Watchers' products and services.  Your actions in this regard may constitute commercial disparagement, defamation, false advertising and more in violation of various state and federal laws.

Accordingly, we ask that you immediately remove the above-noted false claims about Weight Watchers from your Facebook ads, in your emails and on your website, as well as cease communicating false statements with respect to the Weight Watchers weight loss program, wherever they may appear around the world.

Please confirm your compliance with this request by mailing or faxing a signed copy of this letter to me no later than February 28, 2017.  Thank you for your anticipated full and immediate cooperation in this matter.

Very truly yours,                                        Acknowledged and Agreed:


Terri J. Frank                                           _____
                                                         Name:
                                                         Date:

# weightwatchers

Terri J. Frank
Sr. Vice President and Associate General Counsel
Email: terri.frank@weightwatchers.com

**VIA UPS**

March 1, 2017

Saeju Jeong, CEO
Noom, Inc.
229 West 28th Street
New York, NY 10001

Dear Mr. Jeong:

Further to our letter dated February 8, 2017, we note that you have made some changes to your website by removing our brand name, and we assume that you have ceased posting the misleading ads on Facebook and in other media. However, your website still makes comparative claims stating, "Other weight loss programs that use point systems don't tackle the thoughts, triggers, and obstacles that can sabotage your progress...Plus, we don't want you to stress out about points for the rest of your life."

Weight Watchers is famous for its POINTS® weight loss system and consumers will take away the message that the statement at issue is a comparison to Weight Watchers, not other programs. As we stated in our previous letter, our weight loss program helps members learn the skills needed to cope with thoughts and other triggers that can sabotage their weight loss journey. Your claims about our program, therefore, are false and misleading and will cause damage to Weight Watchers' reputation as well as to the reputation of Weight Watchers' products and services. We again ask that you immediately remove the reference to POINTS® systems from your website since that is a clear reference to Weight Watchers.

We trust that you will comply with our request and that we will be able to amicably resolve this matter. If you have any questions, please do not hesitate to contact me.

Very truly yours,

Terri J. Frank

# weightwatchers

Michael F. Colosi
General Counsel & Secretary
Email: michael.colosi@weightwatchers.com

**VIA Overnight Delivery**

August 22, 2017

Saeju Jeong, CEO
Noom, Inc.
229 West 28th Street
New York, NY 10001

Dear Mr. Jeong:

This is now our third letter to Noom regarding misleading statements about Weight Watchers.

On August 9, 2017, an email purporting to be from "Coach Heather" from Noom but actually originating from program-support@e.noom.com was sent under the title "Why Weight Watchers failed you". The posting contained numerous false and misleading statements, including:

"Weight Watchers doesn't have an app which means it's not only more expensive, it costs more time making room for it in your life". This statement is patently false. Weight Watchers has had a mobile app since as early as 2009 and it is one of the most highly rated and popular weight loss apps on the market.

"Weight Watchers doesn't address anything other than sticking to the rules" as compared to Noom's programs which are "backed by science", use "Cognitive Behavioral Therapy" and coaching. In fact, as my colleague Terri Frank informed you in her February 16, 2017 letter, the Weight Watchers approach to weight management is supported by over 70 clinical trials and our program is the most scientifically tested program in the industry, certainly much better tested than Noom's. As you well know, behavior modification is one of the core tenets of our program. Conversely, I am not aware of any scientific literature evaluating or validating Noom's program.

"Weight Watchers has no plan for identifying what truly works for you or how you'll be able to keep up with it for the long haul. Weight Watchers leaves folks feeling like it's all or nothing while Noom understands that every path is different." The Weight Watchers program is all about guiding members towards behaviors that set them up for long term success. Furthermore, unlike Noom the Weight Watchers program has a specific component for weight maintenance which, once completed, entitles a member to free lifetime membership. We have a significant population of lifetime members, some of whom have been on the program for decades. The Weight Watchers program is not a quick fix and has many features and tools that enable the

Noom, Inc.
August 22, 2017
Page 2

program to be personalized for each member.  In fact, one pillar of the Weight Watchers Beyond the Scale program teaches members science-based skills (e.g., cognitive restructuring, mindfulness) that are central for success on the individualized, long-term journey of weight control.

"Counting points is like a game – and not in a good way.  We all know fruit isn't 'free.'  It has calories, too."  The SmartPoints system is not just calorie counting.  It is a proprietary patented system that takes into account the nutritional value of a food, guiding our members toward healthier patterns of eating.  Millions of members have successfully lost weight on this livable and sustainable plan.

"Weight Watchers now offers tiered payment plans.  Only the most expensive option offers coaching with no mobile access."  The Weight Watchers Coaching product does, in fact, include unlimited access to our mobile application and digital tools.

These false and misleading claims about the Weight Watchers program as well as others made by Noom as detailed in our prior communications constitute false advertising under the Lanham Act, commercial disparagement, and defamation and violate federal and state laws.  Noom's continued false claims despite our prior notices to you constitute a pattern of deliberate violation intended to harm our reputation and cause damage to our brand.  In light of this, demand is hereby made that you cease and desist from the publication – in any medium – of false and disparaging statements concerning Weight Watchers, its programs or its products.  Please be assured that Weight Watchers is prepared to take all legal action necessary to protect its legitimate business interests and enforce its rights in this matter.  We reserve all rights to make public statements to correct the record regarding your false claims about our programs and products and about unsubstantiated scientific claims regarding Noom.  We also explicitly reserve all rights in law and at equity to pursue compensatory and punitive damages, injunctive relief, and recovery of legal fees and expenses from your company.

Sincerely,

Michael F. Colosi
General Counsel & Secretary



**Katten**

KattenMuchinRosenman LLP

2900 K Street NW
North Tower - Suite 200
Washington, DC  20007-5118
202.625.3500 tel
www.kattenlaw.com

TERENCE P. ROSS
terence.ross@kattenlaw.com
202.625.3676 direct
202.298.7570 fax

<u>**VIA FEDERAL EXPRESS**</u>

January 31, 2018

Mr. Saeju Jeong
Chief Executive Officer
Noom, Inc.
229 West 28th Street
Suite 502
New York, NY  10001

Re:    **Unauthorized Use of WEIGHT WATCHERS Trademark**

Dear Mr. Jeong:

We represent Weight Watchers International, Inc. ("WWI").  It has come to the attention of WWI that Noom, or persons acting on behalf of Noom, have caused an advertisement to be displayed on Facebook that uses without authorization WWI's WEIGHT WATCHERS trademark.  A copy of this advertisement is attached.  As explained below, the unauthorized use of WWI's trademark in this advertisement violates statutory and common law rights of WWI.  Accordingly, we demand that you immediately stop running the advertisement.

As you appear to be aware, WWI owns several valid and incontestible trademark registrations for WEIGHT WATCHERS in connection with various goods and services.  These include Registration No. 856,202, Class 42 (1968) (WEIGHT WATCHERS); Registration No. 862,744, Class 16 (1968) (WEIGHT WATCHERS); Registration No. 1,380,177, Class 9 (1986) (WEIGHT WATCHERS); Registration No. 1,395,251, Classes 41 and 42 (1986) (WEIGHT WATCHERS); and Registration No. 2,120,106, Class 9 (1997) (WEIGHT WATCHERS); Registration No. 2,990,687, Class 44 (2005) (WEIGHTWATCHERS), among others.

WWI has invested significant resources over many decades to develop the goodwill currently associated with its WEIGHT WATCHERS trademarks.  As a result of the continuous and widespread use of these marks and the extensive advertising and promotion of products and services bearing these marks, they are some of the most widely recognized trademarks in the United States and are considered "famous" within the meaning of the Lanham Act.  Moreover, WWI has accrued extensive goodwill and favorable public acceptance of these trademarks. Needless to say, the WEIGHT WATCHERS trademarks have become assets of incalculable value as symbols of WWI, of its weight-management program, and of the outstanding reputation that WWI has achieved in the public mind as the leading provider of weight-management services and

AUSTIN   CENTURY CITY   CHARLOTTE   CHICAGO   HOUSTON   IRVING   LOS ANGELES
NEW YORK   ORANGE COUNTY   SAN FRANCISCO BAY AREA   SHANGHAI   WASHINGTON, DC
LONDON: KATTEN MUCHIN ROSENMAN UK LLP
A limited liability partnership including professional corporations
130496680v1

Mr. Saeju Jeong
Chief Executive Officer
Noom, Inc.
January 31, 2018
Page 2

products.  Given the importance of these trademarks to WWI, it vigorously protects them and aggressively enforces its rights in them.

In light of the numerous issues WWI has experienced over the past year with other Noom advertisements, when WWI became aware that this new advertisement again used its mark without permission, it referred the matter to us for action.

The use of the WEIGHT WATCHERS mark in this advertisement appears calculated to mislead the public into believing that Noom is affiliated with, connected to or associated with WWI.  It is readily apparent that your intent with respect to this unauthorized use of the WEIGHT WATCHERS mark is to mislead WWI members into believing that this is an advertisement for a new WWI service being offered to millennials.  Having used the mark to interest WWI members into clicking on it for further information about WWI, you then divert their interest to Noom.  Such "initial interest confusion" is actionable as trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125 (a).

This is not the first time that Noom has misused WWI's trademarks.  And, despite warnings from WWI's in-house counsel, Noom continues to engage in this unlawful conduct.  Accordingly, you are instructed immediately to cease and desist any and all forms of advertising that attempt to free ride upon the reputation and goodwill of WWI's marks.  More specifically, we hereby demand that by no later than the close of business on February 12, 2018, you advise us in writing of your agreement to discontinue running this advertisement and to refrain from any such future advertising that misuses WWI trademarks.  We hope that you will discontinue this pattern of unauthorized use of WWI's marks.  If, however, WWI is compelled to bring suit, it will seek all remedies, including damages and attorneys' fees, as well as injunctive relief.  Moreover, you can be assured that such a lawsuit will also include causes of action for false advertising relating to claims made on the Noom website that fail to comply with Federal Trade Commission guidelines.

We look forward to your prompt response to this letter.  Of course, nothing in this letter constitutes a waiver of any rights, remedies, claims or defenses, legal or equitable, that WWI may have, all of which are expressly reserved.

Very truly yours,

Terence P. Ross

TPR:lh

130496680v1

.ıll Verizon LTE     12:13 PM     ⚡ ✳ 95% ▭

Suggested Video

 **Noom**
Sponsored · 🌐     •••

Millennials are calling it Weight Watchers® for the 21st century



**A healthier you in 16 weeks**

    9+