UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WEIGHT WATCHERS INTERNATIONAL, INC.,

                Plaintiff,

v.

NOOM, INC.,

                Defendant.

Case No. 1:18-cv-09637 (PKC)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NOOM, INC.'S MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 4

    I.      Legal Standard for False Advertising Claims ...................................... 4

          A.      Weight Watchers Must Allege Specific *Factual* Statements ...................... 5

          B.      Weight Watchers Must Allege the *Reason Why* the Factual Statements Are False or Misleading ................................................ 5

          C.      The Alleged Factual Statements Must Relate to "An Inherent Quality or Characteristic of the Product" ...................................... 6

          D.      Weight Watchers Must Allege that the Statements Were Disseminated to the Public in "Commercial Advertising or Promotion" ................................................................................. 7

    II.     The False Advertising Claims Should Be Dismissed ............................ 7

          A.      "You aren't still on MySpace, so why are you doing Weight Watchers®?" ............................................................................. 8

               1.      Weight Watchers Does Not Attempt to Allege Literal Falsity ..................................................................... 8

               2.      Weight Watchers Has Not Plausibly Alleged Implied Falsity ..................................................................... 8

          B.      Sally W.'s testimonial: "I have lost more weight with Noom" .................. 9

               1.      Weight Watchers Does Not Attempt to Allege Literal Falsity ................................................................... 10

               2.      Weight Watchers Has Not Plausibly Alleged Implied Falsity ................................................................... 10

          C.      "Lose Weight for Good" .................................................... 11

               1.      Weight Watchers Does Not Attempt to Allege that These Statements Are Literally False ............................ 12

               2.      Weight Watchers Does Not Plausibly Allege that These Statements Are Impliedly False ....................... 12

D.    "I've tried Weight Watchers® and nothing has worked" .......................... 13

    1.    Weight Watchers Does Not Allege that These Statements Are Literally False ......................................... 14

    2.    Weight Watchers Does Not Plausibly Allege that These Statements Are Impliedly False ................................. 14

E.    Television Advertisement: "I yoyo dieted for years.  I counted the points.  I followed the rules and it didn't help me . . . ." ..................... 15

    1.    Weight Watchers Does Not Attempt to Allege Literal Falsity ........................................................ 16

    2.    Weight Watchers Does Not Plausibly Allege Implied Falsity ........................................................ 16

F.    Weight Watchers Has Not Alleged that the "Coach Heather Email" ("Weight Watchers doesn't have an app") Was Commercial Advertising ............................................ 17

G.    "Your course is backed by 8 years of research and proven to be effective by several medical journals" ....................................... 17

    1.    Weight Watchers Has Not Plausibly Alleged that These Statements Are Literally or Impliedly False ................................. 18

    2.    In Actual Fact, "Several Medical Journals" Have Published Studies Proving that Noom Is "Effective" .................. 19

III.    Weight Watchers Has Not Plausibly Alleged Trademark Infringement .............. 22

IV.    Weight Watchers' Remaining Claims Should Be Dismissed for the Same Reasons ............................................................ 24

CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abernathy & Closther, Ltd. v. E & M Advert., Inc.*,
  553 F. Supp. 834 (E.D.N.Y. 1982) ...................................................................7

*Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am.*,
  Inc., 307 F. Supp. 3d 260, 302 (S.D.N.Y. 2018) ....................................24

*Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*,
  984 F. Supp. 768 (S.D.N.Y. 1997) .........................................................24

*Bd.-Tech Elec. Co. v. Eaton Elec. Holdings LLC*,
  No. 17-CV-5028, 2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017), *aff'd*, 737 F.
  App'x 556 (2d Cir. 2018)....................................................................4, 6, 9

*Car-Freshner Corp. v. D & J Distrib. & Mfg., Inc.*,
  No. 14-CV-391 PKC, 2014 WL 3900564 (S.D.N.Y. Aug. 8, 2014) .....................25

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*,
  843 F.3d 48 (2d Cir. 2016)..................................................................... *passim*

*Cortec Industries, Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)..........................................................................19

*Dependable Sales & Serv., Inc. v. Truecar, Inc.*,
  No. 15-CV-1742, 2016 WL 79992 (S.D.N.Y. Jan. 6, 2016) ...................................5

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002)...................................................................7, 17

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013).........................................................................6

*Fur Info. & Fashion Council, Inc. v. E. F. Timme & Son, Inc.*,
  501 F.2d 1048 (2d Cir. 1974)........................................................................6

*Gmurzynska v. Hutton*,
  355 F.3d 206 (2d Cir. 2004).................................................................7, 17

*Groden v. Random House, Inc.*,
  61 F.3d 1045 (2d Cir. 1995)..............................................................5, 9, 11

*In re Int'l Bus. Machines Corp. Sec. Litig.*,
  163 F.3d 102 (2d Cir. 1998).........................................................................5

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,
  823 F.3d 153 (2d Cir. 2016)...............................................................................22, 23, 24

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ..........................................................................................19

*Lipton v. The Nature Co.*,
  71 F.3d 464 (2d Cir. 1995)..........................................................................................5, 9, 18

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
  306 F. Supp. 3d 629 (S.D.N.Y. 2018)...........................................................................6, 10

*Meyer Pincus & Assocs. P.C. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991).............................................................................................19

*POM Wonderful, LLC v. F.T.C.*,
  777 F.3d 478 (D.C. Cir. 2015) .........................................................................................21

*Procter & Gamble Co. v. Chesebrough-Pond's Inc.*,
  747 F.2d 114 (2d Cir. 1984)..............................................................................................19

*Prof'l Sound Servs., Inc. v. Guzzi*,
  349 F. Supp. 2d 722 (S.D.N.Y. 2004)................................................................................7

*Rimini St., Inc. v. Oracle Int'l Corp.*,
  No. 2:14-CV-1699, 2017 WL 5158658 (D. Nev. Nov. 7, 2017) .......................................7, 17

*Sussman-Automatic Corp. v. Spa World Corp.*,
  15 F. Supp. 3d 258 (E.D.N.Y. 2014) .................................................................................24

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007)................................................................................... *passim*

**Statutes**

15 U.S.C. § 45.....................................................................................................................10

15 U.S.C. § 1125............................................................................................................5, 6, 7

28 U.S.C. § 1367(c)(3)........................................................................................................25

N.Y. Gen. Bus. Law § 349................................................................................................24

N.Y. Gen. Bus. Law § 350................................................................................................24

**Regulations**

16 C.F.R. § 255.0..........................................................................................................10, 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1

Fed. R. Evid. 201(b)(2) .............................................................................................20

**Other Authorities**

Chin *et al.*, *Successful Weight Reduction and Maintenance by Using a
    Smartphone Application in Those with Overweight and Obesity*, SCIENTIFIC
    REPORTS, Nov. 2016 ...............................................................................................20

McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed. 2019) ...........................22, 24

Michaelides *et al.*, *Weight Loss Efficacy of a Novel Mobile Diabetes Prevention
    Program Delivery Platform with Human Coaching*, BMJU OPEN DIABETES
    RESEARCH & CARE, Aug. 2016 ...............................................................................20

Michaelides et al., *Usefulness of a Novel Mobile Diabetes Prevention Program
    Delivery Platform with Human Coaching: 65-Week Observational Follow-Up*,
    JMIR MHEALTH & UHEALTH, May 2018 ...............................................................20

Defendant Noom, Inc. respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint of Plaintiff Weight Watchers International, Inc. under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Noom sells a 16-week behavior-change course that teaches users how to lose weight. The course is based in part on the psychological principles of cognitive-behavior therapy. Noom does not sell diet pills or magic solutions. Noom does not promise effortless weight loss. What Noom promises, instead, is to teach psychological tools: habits, mindsets, and practices that empower users to make the sustained effort required to lose weight.

Noom's course is effective. It is effective both at teaching these psychological lessons, and in helping its users attain short- and long-term weight loss. Published studies in medical journals have documented sustained weight loss by tens of thousands of Noom users, and the Centers for Disease Control has awarded Noom "CDC Full Recognition" based on "the sustained success of [Noom's] lifestyle change program." *See* Request for Judicial Notice, Exs. 1-10 (published studies and CDC certificate).

Noom's marketing messages make clear that Noom is selling a behavior-change course. Noom's own description (part of almost all the Facebook posts included in the Amended Complaint) states that Noom gives users "behavior change tools" and teaches users how to "push past plateaus and tame temptations":

> **A healthier you in 16 weeks**
> Join 45+ million regular people learning to push past plateaus and tame temptations without starving or stressing out. Noom's 16-week course gives you the behavior change tools to forgive, practice, and (finally) stick to plan.

Ex. B to Amend. Compl, Ad Image 5, ECF 24-2.[1]

Weight Watchers' Amended Complaint does not identify any statements, by Noom, regarding "an inherent quality or characteristic of the product," that is, any statements *about the 16-week course* that Noom offers. *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 70 (2d Cir. 2016) (quoting *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014)). Not one word of the Complaint contends either (a) that the psychological tools taught in Noom's course are not effective in promoting weight loss; or (b) that Noom's course is not effective at teaching these psychological tools. *See* Amend. Compl. ¶¶ 4, 68 (summarizing allegations). Tellingly, Weight Watchers does not dispute the only specific, measurable statement Noom made about its users' actual weight loss: "Average user loses 18 lbs in 16 wks." Amend. Compl. ¶ 43 (copying advertisement that contains this statement, but not alleging that this statement is false).

Rather than basing its Amended Complaint on what Noom actually said about its service's "inherent qualities or characteristics," Weight Watchers instead attempts to find, in Noom's advertisements, various predictions about what Noom *users* "will do" in the future. According to Weight Watchers, Noom has made predictions about the amount of weight that Noom's users will lose in the future (compared to what they will lose if they purchase Weight Watchers' program), the speed at which Noom's users "will lose" weight (again, compared to Weight Watchers), or the length of time Noom's users "will" maintain their weight loss in future. These alleged predictions are not actionable, for three reasons.

---

[1] Some of these Facebook posts end with the words "gives you the behavior change"—at least, that is how they appear in the versions attached to the Amended Complaint. Weight Watchers does not allege that this elision of the final words makes these posts false or misleading.

*First*, Noom did not actually make these predictions.  The marketing messages Weight Watchers relies on are all non-actionable puffery: "subjective claims" that "cannot be proven either true or false" or that otherwise use "broad, vague, and commendatory language."  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007).  Weight Watchers distorts this puffery beyond recognition.

Consider, for example, Weight Watchers' first allegation, which takes issue with Noom Facebook posts that ask: "You aren't still on MySpace, so why are you doing Weight Watchers®?"  Amend. Compl. ¶¶ 30-32; Ex. B Ad Images 1-4.  The Amended Complaint transmogrifies this question into a prediction that "consumers will lose more weight in 16 weeks using [Noom] than they will lose in 16 weeks using the Weight Watchers Program."  Amend. Compl. ¶ 32.  Come again?  That is simply not what the advertisement says.  The entire Amended Complaint is full of this kind of fantasy.

*Second*, even if Noom's marketing could plausibly be read to imply specific predictions about how much, how fast, and for how long users "will lose" weight (and it can't), predictions are not statements of *fact.* Predictions of future weight loss (which is what Weight Watchers alleges) are statements of opinion, and therefore are not actionable.

*Third*, even if Noom made predictions about what users "will lose," those predictions are not representations regarding "an inherent quality or characteristic of" the "product" at issue, namely, Noom's 16-week course.  *Church & Dwight*, 843 F.3d at 70.  To state a claim for false advertising, Weight Watchers would have to identify a specific false statement *about the course itself.*  Weight Watchers does not even allege that Noom's course is ineffective.

Weight Watchers' trademark infringement claims fare no better.  There are only two statements at issue here: "[M]illennials are calling" Noom "Weight Watchers® 2.0" and

"Millennials are calling" Noom "Weight Watchers® for the 21st century."  Amend. Compl. ¶ 59.
Both uses of Weight Watchers' trademark are lawful because they are "nominative fair uses,"
meaning that these are uses of Weight Watchers' name that indicate Noom is *different from, and
better than*, Weight Watchers.

In short, this case is an attempt by Weight Watchers to oppress and harass Noom, its
smaller and younger competitor, and to obtain from Noom copious amounts of information.
Weight Watchers has already demanded that Noom produce all documents concerning "the
effectiveness of Noom's Programs as compared to Weight Watchers' Programs"; "any market
research relating to Weight Watchers"; "Noom's digital marketing strategy to compete with
Weight Watchers"; "Noom's business strategy to compete with Weight Watchers"; and "any
effort by Noom to take customers or market share from Weight Watchers."[2]  This kind of
discovery—and the trial that would follow, in which a federal jury would be asked to decide
which competitor has the better approach to weight loss—are not appropriate uses of the Lanham
Act.  The case should be dismissed.  *See, e.g., Bd.-Tech Elec. Co. v. Eaton Elec. Holdings LLC*,
No. 17-CV-5028, 2017 WL 4990659, at *7 (S.D.N.Y. Oct. 31, 2017) (dismissing false-
advertising claim in part because the lawsuit would "expose competitive . . . information to
precisely the entity that should not have it"), *aff'd*, 737 F. App'x 556 (2d Cir. 2018).

## ARGUMENT

### I.    Legal Standard for False Advertising Claims

As to each of the allegedly false statements, Weight Watchers fails to plausibly allege at
least one of four required elements: (1) a specific factual statement; (2) regarding an "inherent

---

[2] These are, respectively, document requests numbered 1, 94, 104, 105, and 107.  They were
served on December 27, 2018.

quality or characteristic of the product"; (3) the reason why the factual statement is allegedly false; and (4) that the statement was made in "commercial advertising."

### A.      Weight Watchers Must Allege Specific *Factual* Statements

The Lanham Act only applies to a "false or misleading representation *of fact*."   15 U.S.C. § 1125(a)(1) (emphasis added).   The Lanham Act does not impose liability on "a statement of opinion that could not reasonably be seen as stating or implying proveable facts." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995); *Lipton v. The Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) ("[s]ubjective claims about products, which cannot be proven either true or false, are not actionable under the Lanham Act").

Predictions about what will happen in the future are statements of opinion.   In the analogous fraud context, the Second Circuit has held that predictions are not actionable as "false" statements, unless the plaintiff pleads (as Weight Watchers has not) that Noom did not actually believe the predictions.  *See, e.g., In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) ("The statements challenged by plaintiffs are expressions of optimism or projections about the future" and therefore were not actionable under federal securities laws).

Moreover, Weight Watchers must provide notice of the specific statements that are alleged to be false or misleading.  *See, e.g., Dependable Sales & Serv., Inc. v. Truecar, Inc.*, No. 15-CV-1742, 2016 WL 79992, at *6-*8 (S.D.N.Y. Jan. 6, 2016) (dismissing "bait-and-switch," "transparency," "financing," and "rebate" false-advertising claims because complaint "does not identify" any advertisements supporting these claims).

### B.      Weight Watchers Must Allege the *Reason Why* the Factual Statements Are False or Misleading

Weight Watchers must further give Noom (and the Court) notice of the *reason why* Weight Watchers alleges the factual statements to be false or misleading.  There are two different

"theories of recovery": literal falsity and implied falsity. *Time Warner*, 497 F.3d at 153.  A literal falsehood is one that is "false on its face." *Id.*  An implied falsehood is one that "[leaves] an impression on the listener [or viewer] that conflicts with reality."  *Id.*

Under both of these two "theories"—literal falsity and implied falsity—Weight Watchers must allege what it contends the actual truth to be.  In order to claim implied falsity, Weight Watchers must further allege how the advertisement would mislead a reasonable consumer.  Conclusory allegations do not suffice.  *Bd.-Tech Elec. Co.*, 737 F. App'x at 560 (affirming district court's dismissal because "[t]he Complaint offers no non-conclusory allegations or facts to support the claim that consumers have been misled or confused"); *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer"); *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018) (dismissing false advertising claim where counterclaimant failed to plausibly allege that reasonable consumer would be misled).

### C.    The Alleged Factual Statements Must Relate to "An Inherent Quality or Characteristic of the Product"

The Lanham Act only applies to factual statements that "misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).

The Second Circuit has long interpreted this text as limiting the Lanham Act "only to misrepresentations relating to the inherent qualities" of the goods and services being advertised. *Fur Info. & Fashion Council, Inc. v. E. F. Timme & Son, Inc.*, 501 F.2d 1048, 1051 (2d Cir. 1974) (affirming dismissal of false-advertising claim, where defendant had falsely claimed that buying defendant's imitation furs would "save tigers and leopards from being killed").  This

element is an aspect of materiality.  "[F]or a false message to be material, the defendant must have at least 'misrepresented an inherent quality or characteristic of the product.'"  *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 70 (2d Cir. 2016) (quoting *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014)).  This is an element that must be pled in the complaint.  *Abernathy & Closther, Ltd. v. E & M Advert., Inc.*, 553 F. Supp. 834, 837 (E.D.N.Y. 1982) (dismissing false-advertising claim, even though defendant had made "patently false" statements that its offer was made "for the first time on T.V.," because these statements did not relate to an "inherent quality or characteristic" of defendant's products).

### D.    Weight Watchers Must Allege that the Statements Were Disseminated to the Public in "Commercial Advertising or Promotion"

The Lanham Act only applies to "commercial advertising or promotion."   15 U.S.C. § 1125(a)(1)(B).   The Second Circuit therefore requires that "the contested representations are part of an organized campaign to penetrate the relevant market."  *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002).  Courts will dismiss complaints that fail to allege that the statement was disseminated to the public.  *See, e.g.*, *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004); *Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-CV-1699, 2017 WL 5158658, at *12 (D. Nev. Nov. 7, 2017); *see also Prof'l Sound Servs., Inc. v. Guzzi*, 349 F. Supp. 2d 722, 729 (S.D.N.Y. 2004) (Chin, J.) (granting summary judgment to defendant because "[d]issemination of a statement to one customer out of 36 simply does not meet" the *Fashion Boutique* standard for "commercial advertising").

## II.    The False Advertising Claims Should Be Dismissed

Weight Watchers identifies seven groups of advertisements that it claims are "false."  The Amended Complaint fails to plausibly allege falsity as to any of these seven groups.

A.       **"You aren't still on MySpace, so why are you doing Weight Watchers®?"**

Weight Watchers' first group of advertisements consists of Facebook posts that feature a prominent Noom banner, a large image, and in between, a question:  "You aren't still on MySpace, so why are you doing Weight Watchers®?"  Amend. Compl. ¶ 31.

### 1.       Weight Watchers Does Not Attempt to Allege Literal Falsity

This question is not a statement at all—much less, a literally false statement.  In order to plead a claim for literal falsity by necessary implication, Weight Watchers would have to allege that its own interpretation is the *only reasonable interpretation* of the advertisements.  *Time Warner*, 497 F.3d at 158 ("[I]f the language . . . is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false.").  Weight Watchers does not allege that its interpretation is the only reasonable one.  Instead, Weight Watchers concedes that this question may have "alternative[]" meanings.  Amend. Compl. ¶ 34.

### 2.       Weight Watchers Has Not Plausibly Alleged Implied Falsity

Weight Watchers alleges that this question is impliedly false because it "convey[s]" various misleading "messages."  Amend. Compl. ¶¶ 32, 34.  These implied "messages" are fantasy.  Here is what Weight Watchers conjures from Noom's question:

(1) "[C]onsumers will lose more weight in 16 weeks using [Noom's] Program than they will lose in 16 weeks using the Weight Watchers Program, and consumers will lose more weight using [Noom's] Program than they will lose using the Weight Watchers Program for the same amount of time."  *Id.* ¶ 32.

(2) "In addition or alternatively, each advertisement conveys the messages that consumers will not lose weight in 16 weeks using the Weight Watchers Program, and consumers will not lose weight with the Weight Watchers program at all."  *Id.* ¶ 34.

These supposed "messages" are nowhere found in the actual advertisements.

These implied "messages" are not plausible.  Noom's question ("why are you doing Weight Watchers®?") is nowhere near specific enough to be actionable as a false statement.  *See*

*Lipton*, 71 F.3d at 474 ("[S]ubjective claims about products, which cannot be proven either true or false, are not actionable under the Lanham Act.").  Moreover, Weight Watchers fails to offer any "non-conclusory allegations or facts to support the claim that consumers have been misled or confused."  *Bd.-Tech Elec. Co.*, 737 F. App'x at 560.

These advertisements convey many possible messages about Noom and Weight Watchers, all of which are "subjective" and "vague."  *Time Warner*, 497 F.3d at 159.  For instance, by comparing Weight Watchers to MySpace (which Weight Watchers has earlier told the Court is an "obsolete social media channel," ECF No. 20 at 10), the advertisements may convey: (a) that Noom is designed to appeal to the generation of consumers that uses Facebook rather than MySpace; or (b) that by using Noom, a consumer is more likely to be placed in a support group of other users of similar age – the list goes on.

Moreover, *even if* these advertisements "conveyed" the implied "messages" that Weight Watchers alleges, these messages are not actionable because they are predictions about what some (unnamed) consumers "will lose."  Predictions are opinions, and opinions cannot "reasonably be seen as stating or implying provable facts."  *Groden*, 61 F.3d at 1051.

Finally, these supposed predictive "messages" are all related to what users may themselves do in future; they are not factual statements about "an inherent quality or characteristic of" Noom's or Weight Watchers' services.  *Church & Dwight*, 843 F.3d at 70.

### B.    Sally W.'s testimonial: "I have lost more weight with Noom"

Second, Weight Watchers complains about a comment by Noom user Sally W., which Noom published in another Facebook post.  Amend. Compl. ¶ 36.  Sally's review begins with a row of five stars, and then states: "I have lost more weight with Noom in 5 weeks than I lost in 10 months on Weight Watchers."  *Id.*

### 1.      Weight Watchers Does Not Attempt to Allege Literal Falsity

Weight Watchers does not (and cannot) allege that this testimonial is literally false, *i.e.*, that Sally W. did not herself "lose more weight with Noom," as her review states.  Nor does Weight Watchers contend that this review has only one possible meaning, so as to be literally false by necessary implication.  *See Time Warner*, 497 F.3d at 158.

### 2.      Weight Watchers Has Not Plausibly Alleged Implied Falsity

Instead, Weight Watchers again alleges that Noom's marketing is false because Sally W.'s review supposedly "conveys" various implied "messages."  Amend. Compl. ¶ 37.

#### i)      *Sally W.'s review does not claim to be representative*

The first "message" that Weight Watchers alleges is that "Sally W.'s experience is representative of what consumers generally will achieve." *Id.* ¶ 37.  That is implausible.  The actual message—consistent with the five stars appearing above Sally W.'s comment—is that Sally is making a positive review (much like the reviews that users might see on Amazon.com, or Goodreads.com), indicating that Sally herself had this experience—that is, that she herself lost more weight after Noom for five weeks, than she had previously lost at the end of a ten-month period using Weight Watchers.

Weight Watchers is likely to cite the Federal Trade Commission (FTC) "Guides" on testimonials as some kind of authority for the proposition that all testimonials necessarily imply a message that the testimonial is representative of what other users have experienced. *See* 16 C.F.R. § 255.0 *et seq.*  That reliance is misplaced.  The FTC Guides do not govern Lanham Act claims. *Lokai Holdings*, 306 F. Supp. 3d at 639 (dismissing Lanham Act claim that alleged violation of FTC Guides).   Instead, the FTC's Guides "provide the basis for voluntary compliance" with *the FTC Act*, a *different* law. 16 C.F.R. § 255.0 (Guides "address the application of Section 5 of the FTC Act (15 U.S.C. § 45)").  Moreover, the Guides are not a

definitive agency statement about what even the FTC Act means; rather, they are intended to "set forth the general principles the *Commission will use* in evaluating testimonials."   16 C.F.R. § 255.0.

### ii)    Sally W.'s review is not a specific factual statement

Moreover, Sally W.'s review contains no specific factual statements about her "experience."  Her review is instead mere puffery.  *Time Warner*, 497 F.3d at 159.

Sally W.'s review does not state the *amount* of weight that she lost using either Noom or Weight Watchers.  Nor does she make any specific claim about the *speed* of her weight loss. Weight Watchers contends that the "message" "conveyed" is that "most consumers will lose weight faster using [Noom]," Amend. Compl. ¶ 37, but that is not what Sally says.  What she says is that after five weeks using Noom, she had lost more weight than at the *end of* a ten-month period of using Weight Watchers.  Her statement says nothing about speed.  She might have lost weight quickly during her Weight Watchers time, then gained it back—her statement does not say.  In short, her review boils down simply to this:  Noom was a better weight-loss service, for me, than Weight Watchers.  That is a non-specific claim of superiority, not a specific factual statement capable of being proven true or false.  *See Time Warner*, 497 F.3d at 159.

Finally, here again Weight Watchers' supposed "messages" are predictions about the speed by which "most consumers will lose" weight.  Amend. Compl. ¶ 37.  Predictions are non-actionable opinions.  *Groden*, 61 F.3d at 1051.  And these supposed "messages" are related to what users may themselves do; they are not factual statements about "an inherent quality or characteristic of" Noom's or Weight Watcher's services.  *Church & Dwight*, 843 F.3d at 70.

### C.    "Lose Weight for Good"

Third, Weight Watchers groups together several advertisements that use the phrases "permanent weight loss in the palm of your hand" and "lose weight for good."  Amend. Compl.

11

¶¶ 40-44.  What Weight Watchers fails to acknowledge (and elides in selective quotations) is that each of these advertisements *also* contains a description of what Noom actually does, namely, teach psychological tools:

> **A healthier you in 16 weeks**
> Join 45+ million regular people learning to push past plateaus and tame temptations without starving or stressing out.  Noom's 16-week course gives you the behavior change tools to forgive, practice, and (finally) stick to plan.

*E.g.*, Ex. B to Amend. Compl, Ad Image 5, ECF 24-2.

### 1. Weight Watchers Does Not Attempt to Allege that These Statements Are Literally False

Weight Watchers does not (and cannot) allege that Noom's description of its service is literally false.  That is, Weight Watchers does *not* allege that users do not learn "behavior change tools" during Noom's 16-week course.  Weight Watchers does *not* allege that these "behavior change tools" are forgotten or disappear after the 16-week course is over.  And Weight Watchers does *not* challenge the following truth:  If a consumer continues to use the "behavior change tools" taught in Noom's 16-week course, then the consumer will maintain lower weight.

### 2. Weight Watchers Does Not Plausibly Allege that These Statements Are Impliedly False

Instead, Weight Watchers misconstrues Noom as "conveying" the implied "message" that users' weight loss will be maintained *even if* the user "stop[s] using" the tools taught during the course.  Amend. Compl. ¶ 41.  The advertisements, of course, do not say that.  Weight Watchers then contends that this "message" is false because "[i]t is not possible to lose weight for good simply by using Defendant's Program *for only 16 weeks*."  *Id.* ¶ 44 (emphasis added).

This misreading of Noom's advertisements is implausible.  Weight Watchers asks the Court to believe that a reasonable consumer would be misled into thinking that Noom's app acts as some kind of digital talisman that, merely by existing on the user's phone, permanently

removes pounds from the user's body—no matter what the user does. This is nonsensical. No reasonable consumer would believe that Noom's app is a weight loss *product* (like a diet pill) that causes weight loss by some mechanism other than the user's own behavior. No reasonable consumer would believe that a 16-week course that markets itself, in the very advertisements now being challenged, as teaching "behavior change tools," is promising that permanent weight loss will occur *regardless of the consumer's behavior*.

Moreover, as with the previous groups of advertisements, Weight Watchers' allegations fail because Weight Watchers' supposed "message" is a prediction (meaning, an opinion) that "consumers will not regain the weight." *Id.* ¶ 41. Likewise, Weight Watchers' allegation of the reason why this message is impliedly false also depends on a prediction, namely, Weight Watchers' prediction that "[m]ost consumers will regain some or all of the weight they lose using Defendant's Program for only 16 weeks." *Id.* ¶ 42. Predictions are opinions that are not actionable under the Lanham Act.

Finally, Weight Watchers' supposed predictive "messages" all relate to what users will or will not do—these messages do not relate to any "inherent quality or characteristic of" Noom's 16-week course. *Church & Dwight*, 843 F.3d at 70.

### D. "I've tried Weight Watchers® and nothing has worked"

Fourth, Weight Watchers conflates two different parts of two silent videos (Ad 11 and Ad 12 of Exhibit B) in order to allege, implausibly, that Noom has "conveyed" the "message" that Weight Watchers "uses techniques associated with crash diets." Amend. Compl. ¶¶ 45-46.

The videos do not state the literal "message" that Weight Watchers alleges. Weight Watchers conflates two statements that appear early in each video (at 0:04), which state either that "*most weight loss programs* are based on unsustainable dieting" (Ad 11, showing Sally W.) or that "most weight loss programs are based on crash dieting" (Ad 12, showing a slice of

13

cake)—and Weight Watchers then conflates this early statement with an *entirely different testimonial*, from a *later part of the video* (0:16).  In the later testimonial, a different Noom user's image appears, behind the quotation "I've tried Weight Watchers® and nothing has worked!"  In the twelve-second gap between these two statements, the videos display a number of unrelated statements about Noom (which Weight Watchers does not allege to be false): "Meet Noom . . . the LAST weight-loss program you'll ever need . . . no food is forbidden, just ten minutes a day, keep the weight off."

### 1. Weight Watchers Does Not Allege that These Statements Are Literally False

Weight Watchers does not plausibly allege literal falsity because Weight Watchers does not allege that the statements (taken separately) are false at all.  Weight Watchers does not dispute the statements (at 0:04) that "most weight loss programs" are "based on unsustainable dieting" or "crash dieting."  Nor does Weight Watchers dispute that the testimonial (at 0:16) is literally true, *i.e.*, that this customer (a) tried Weight Watchers, and (b) "nothing has worked."  Moreover, Weight Watchers concedes that the videos send (at least) two different "messages," meaning they cannot be literally false by necessary implication.  *Time Warner*, 497 F.3d at 158.

### 2. Weight Watchers Does Not Plausibly Allege that These Statements Are Impliedly False

Instead of alleging literal falsity, Weight Watchers instead invents two alternative implied "messages."  First, Weight Watchers contends that the videos are impliedly false because the testimonial (at 0:16) will be interpreted as a claim that Weight Watchers is among the unspecified group of "most weight loss programs" mentioned at the beginning of the video (at 0:04) which programs were described, in those earlier statements, as "based on unsustainable dieting" or "based on crash dieting."  Amend. Compl. ¶ 46.  In the alternative, Weight Watchers contends that this video makes the (non-actionable) prediction that "users of the Weight

Watchers Program will regain the weight they lose." *Id.* Not only is that reading implausible, it is also an opinion rather than a provable statement of fact.

Weight Watchers' implied-falsity claim fails for at least three reasons. First, the terms "unsustainable dieting," "crash dieting," and "nothing has worked" are too vague to support a Lanham Act claim. *See Time Warner*, 497 F.3d at 161 (images showing "unwatchably distorted" images of competitors' TVs were puffery).

Second, the two statements in these videos, are distinct and separate. Their words are different—"crash dieting" is not the same message as "nothing has worked"—and they are separated by the majority of the video, which is filled with content about Noom. No visual similarities (in images or in text) link the "most weight loss programs" statement (at 0:04) to the testimonial (at 0:16).

Third, Weight Watchers does not even allege that the testimonial (0:16: "I've tried Weight Watchers® and nothing has worked") implies that this experience is typical of all Weight Watchers users.

### E. Television Advertisement: "I yoyo dieted for years. I counted the points. I followed the rules and it didn't help me . . . ."

Fifth, Weight Watchers complains about Noom's television advertisement (Ad 13, Compl. ¶ 48). The audio states:

> [Jennifer]: "I yoyo dieted for years. *[Genia:] I counted the points. I followed the rules and it didn't help me long term.* [Michelle:] I was just so tired of losing the weight and gaining it all back. [Jennifer:] But I found something new. It's called Noom. [Michelle:] It's not a diet. It's a totally different personalized program [...] [Genia:] that uses psychology and small goals to change your habits [...] [Jennifer:] so that you can lose the weight [...] [Michelle:] and keep it off for good. [Genia:] It's super easy to get started. So what do you have to lose? Visit Noom.com today and lose the weight for good."

Amend. Compl. ¶ 49 (emphasis added). Weight Watchers alleges falsity based on Genia's claim that she "counted the points" and "followed the rules" but "it didn't help me long term."

15

### 1. Weight Watchers Does Not Attempt to Allege Literal Falsity

Weight Watchers does not attempt to allege that Genia's statement is literally false, that is, that Genia did not "count the points" or "follow the rules," or that doing this actually did "help [her] long term."

### 2. Weight Watchers Does Not Plausibly Allege Implied Falsity

Instead, Weight Watchers alleges, without explanation, that "[t]his advertisement conveys the message that the Weight Watchers Program is based on diet alone." Amend. Compl. ¶ 50. This is implausible for at least three reasons.

First, nothing in Genia's statement, or the rest of this video, purports to give an exhaustive list of what Weight Watchers' Program is and is not "based on." *Id.* ¶ 50.

Second, Weight Watchers does not allege that consumers would be misled into believing that Genia's experience with Weight Watchers (if that was in fact the diet she referred to) was typical of Weight Watchers users.

Third, Genia does not even mention Weight Watchers by name. Though Genia does use the word "points" to describe her prior experience, Weight Watchers' system is actually called "SmartPoints." *Id.* ¶ 13.

Moreover, even if this implied "message" about Weight Watchers being "based on diet alone" were a plausible reading of Genia's statement (it is not), this message would still be puffery because it is not provable factual statement.

Finally, Weight Watchers does not allege that its program was not "based on diet alone" during earlier periods of time (before 2008). *See id.* ¶ 51. Genia (who appears to be in her thirties or forties) gives no indication of *when* she "counted the points."

16

**F.     Weight Watchers Has Not Alleged that the "Coach Heather Email" ("Weight Watchers doesn't have an app") Was Commercial Advertising**

Sixth, Weight Watchers takes issue with "an email purporting to be from 'Coach Heather,'" allegedly stating that "Weight Watchers doesn't have an app."  Amend. Compl. ¶ 52. Weight Watchers has not attached the email as an exhibit to its Amended Complaint.

As Noom pointed out in its pre-motion letter, ECF 19 at 5, Weight Watchers has failed to allege any public distribution of this supposed "email."  Specifically, Noom wrote:

> Where does Weight Watchers allege that this statement was made, and to whom?  Not every statement is sufficiently public to give rise to liability under the Lanham Act.  *See, e.g.*, *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002) ("easily" concluding that twenty-seven oral statements at trade shows were not "disseminated widely" enough to qualify as "'commercial advertising or promotion' under the Lanham Act").

*Id.*  Weight Watchers' Amended Complaint does not even attempt to answer these questions or allege facts that would satisfy the *Fashion Boutique* standard for what constitutes "'commercial advertising or promotion' under the Lanham Act."  *Fashion Boutique*, 314 F.3d at 57.  This claim should be dismissed for failure to allege that "Coach Heather's" "email" was a statement made in "commercial advertising."  *Gmurzynska*, 355 F.3d at 210 (affirming dismissal of false-advertising claim on this basis); *Rimini*, 2017 WL 5158658, at *12 (dismissing on this basis).

**G.     "Your course is backed by 8 years of research and proven to be effective by several medical journals"**

Seventh, Weight Watchers complains about a statement Noom made on its website about the effectiveness of its 16-week course.  Here is the complete statement:

**Full Customized Plan**

Learn the truth about bad habits and how to beat them, so you can stop dieting forever. Your course is backed by 8 years of research and proven to be effective by several medical journals.

Amend. Compl. ¶ 54.  This statement makes no claims about the amount of weight loss that users have achieved; the speed of the weight loss; or the permanence of the weight loss.  On the contrary, the first sentence of this statement (correctly) describes Noom's course as teaching "the truth about bad habits and how to beat them."  The second sentence then states that this "course" is (1) "backed by 8 years of research" and (2) "proven to be effective by several medical journals."

### 1.    Weight Watchers Has Not Plausibly Alleged that These Statements Are Literally or Impliedly False

As for the first statement—"backed by 8 years of research"—Weight Watchers does not (and cannot) allege that this is literally or impliedly false.  Noom has been in business for more than eight years, and has been researching its service (and users' experiences with the service) during that time.  Weight Watchers does not contend otherwise.  Moreover, the amount of research performed is "puffery."  *Lipton*, 464 F.2d at 474 (claim that party had "conducted thorough research" is "mere 'puffing' and does not constitute false advertising").

As for the second statement—that the "course" is "proven to be effective by several medical journals"—that claim is also puffery because the word "effective" is not a specific measurable factual claim.  The word "effective" modifies the term "course," and therefore can mean "effective in identifying useful psychological tools for weight loss"; "effective at teaching these tools"; and so on.

Moreover, even if Noom had written the exact message that Weight Watchers now alleges—i.e., that the course is "effective in helping [users] to lose weight and keep it off," *id.*— Weight Watchers *does not allege that this "message" is false.*  The Amended Complaint does not allege that Noom is not "effective."  *See* Amend. Compl. ¶¶ 4, 68.  Tellingly, Weight Watchers has *not* claimed that Noom's other advertisement, which does make a specific factual

statement about users' "average" experience, is false.  *See id.* ¶ 43 (not alleging that the statement "Average user loses 18 lbs in 16 wks" is false).

Rather than allege that Noom is not "effective," Weight Watchers instead alleges that an additional word—"proven"—makes the statement about "several medical journals" false by overstating the reliability of these studies.  *Id.* ¶¶ 55-56 (contending that because none of the published articles reports a "randomized, controlled" study, the advertisement is misleading because it overstates the scientific support for Noom's effectiveness). But a quibble over testing methodology is not sufficient to state a claim for false advertising.  *Procter & Gamble Co. v. Chesebrough-Pond's Inc.*, 747 F.2d 114, 119 (2d Cir. 1984) (affirming district court's finding that Chesebrough was unlikely to prevail on false-advertising claim against P&G, even though P&G's ads stated that "dermatologists proved" in "clinical tests" that "New Wondra works better than any other leading lotion," and even though district court found that P&G's tests "were far from perfect and are subject to various infirmities").

In short, Weight Watchers has not alleged that Noom is not "effective." Therefore, Weight Watchers' quibbles over testing methods do not support a plausible allegation that Noom's advertisement has misled consumers.

### 2.    In Actual Fact, "Several Medical Journals" Have Published Studies Proving that Noom Is "Effective"

Moreover, Noom's statement—that its course is "proven" effective by "several medical journals"—is true.  Noom's Request for Judicial Notice, filed herewith, attaches several studies about Noom, which were published in medical journals.   These materials are appropriately considered in a motion to dismiss. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991); *Meyer Pincus & Assocs. P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporating by

reference web materials surrounding an allegedly defamatory statement); Fed. R. Evid. 201(b)(2) (court may take judicial notice of the *fact* of these published studies and their stated conclusions).

These studies demonstrate that Noom is "effective" at promoting short- and long-term weight loss.  Many users experience short-term weight loss during the 16-week course, and many users maintain that weight loss in the long term after the course is over.  For example, a study of overweight or obese adults with prediabetes found that "[w]eight loss at 16 and 24 weeks was significant, with 56% of starters and 64% of completers losing over 5% body weight."  *See* Andreas Michaelides *et al.*, *Weight Loss Efficacy of a Novel Mobile Diabetes Prevention Program Delivery Platform with Human Coaching*, BMJU OPEN DIABETES RESEARCH & CARE, Aug. 2016, at 1 (Issacharoff Decl. Ex. 2).  A follow-up study found that 44% of all of those who had begun the program had lost 5% of bodyweight or more 65 weeks later, with that figure rising to 53% of those who had completed the original course and 66% of those who had maintained use of the app beyond the course.  *See* Andreas Michaelides et al., *Usefulness of a Novel Mobile Diabetes Prevention Program Delivery Platform with Human Coaching: 65-Week Observational Follow-Up*, JMIR MHEALTH & UHEALTH, May 2018, at 4 (Issacharoff Decl. Ex. 1).  Nor is this evidence limited to "preliminary or pilot studies involving only small groups of people."  Amend. Compl. ¶ 55.  A study of 35,961 Noom users found 77.9% of users reported a decrease in body weight while using the app over a median of 267 days.  *See* Sang Ouk Chin *et al.*, *Successful Weight Reduction and Maintenance by Using a Smartphone Application in Those with Overweight and Obesity*, SCIENTIFIC REPORTS, Nov. 2016 (Issacharoff Decl. Ex. 7).

Moreover, the Centers for Disease Control has given Noom "full recognition" as a certified online provider of diabetes-prevention services, which designation is based upon the published studies.  *See* Issacharoff Decl. Ex. 9.  The certificate recognizes that Noom has earned

"CDC Full Recognition" for its "diabetes prevention program," based on the "sustained success of [Noom's] lifestyle change program." *Id.* As the CDC notes, "[t]his designation is reserved for programs that have effectively delivered a *quality, evidence-based program* that meets all of the standards for CDC recognition." *Id.* (emphasis added).

Noom attached, to its premotion letter, an appendix naming these and other published studies. ECF 19, at 7. In response, Weight Watchers' Amended Complaint places even more weight on the allegation that Noom's use of the word "proven" is false because these journals do not report on "randomized, controlled" studies. Amend. Compl. ¶ 55.

Weight Watchers may cite cases affirming Federal Trade Commission enforcement actions. The FTC has, on occasion, required advertisers to conduct more rigorous tests to support certain claims that "tests prove" something about a product. Those are highly factbound decisions by an expert agency, which are reviewed under the deferential "substantial evidence" standard. *E.g.*, *POM Wonderful, LLC v. F.T.C.*, 777 F.3d 478, 490 (D.C. Cir. 2015).

Even assuming that FTC's administrative actions (based on a *different* statute, the FTC Act) have any relevance here, these actions support Noom, not Weight Watchers. Noom's "tests prove" claim is, in the parlance of the FTC caselaw, a "non-specific" tests-prove claim. *Id.* (describing as an example of a non-specific tests-prove claim, "an ad stating that a product's efficacy is 'medically proven'"). For non-specific tests-prove claims, the FTC does *not* require any "specific type of substantiation," such as a randomized, controlled study. *Id.* Rather, for non-specific "efficacy" claims, the FTC only requires that the advertiser "possess evidence sufficient to satisfy the relevant scientific community of the claim's truth." *Id.* Here, Weight Watchers does not allege that the "relevant scientific community" would require a "randomized, controlled" study in order to be "satisf[ied]" that Noom's weight-loss course is "effective."

### III.    Weight Watchers Has Not Plausibly Alleged Trademark Infringement

Weight Watchers claims that certain advertisements referring to Weight Watchers somehow confuse consumers into believing that Noom is sponsored by or affiliated with Weight Watchers.  Here is one example:



Amend. Compl. ¶ 59.

These advertisements are "nominative fair use," because Noom has "use[d]" Weight Watchers' name "to identify, not the defendant's goods or services, but the plaintiff's goods or services."  McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed. 2019).

The Second Circuit has adopted three factors specifically relating to "nominative fair use."  *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 168 (2d Cir. 2016).  The factors are:

(1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark;

22

 (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and

 (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services.

*Id.*  All three factors are met, based on the facts alleged by Weight Watchers:

   (1) Noom is only able to compare itself to Weight Watchers by using the name of its competitor.  Weight Watchers does not plead any alternative means for Noom to compare itself to Weight Watchers, other than by using Weight Watchers' name.

   (2) Noom has only used the Weight Watchers' name, and no other trademarks.  That is, Noom has only used "so much of plaintiff's mark as is necessary" to identify Weight Watchers' rival service.  Noom has applied the ® symbol to denote that the name is a registered trademark.

   (3) Noom is not alleged to have done anything else, besides using Weight Watchers' name in these advertisements, that would "suggest sponsorship or endorsement" by Weight Watchers.

In addition to these three factors, courts must consider the eight *Polaroid* factors for consumer confusion—even though the Second Circuit also recognizes that "many of the *Polaroid* factors are a bad fit" in nominative fair use cases.  *Id.*; *see id.* at 165 (restating *Polaroid* factors).  Here, the relevant *Polaroid* factors favor dismissal: (2) the marks are dissimilar; (5) consumer confusion is implausible; (6) Weight Watchers does not allege bad faith; and (7) Weight Watchers does not allege a difference in the "respective quality" of the two services.

Dismissal is appropriate here, and discovery is not necessary, because it is not plausible that a reasonable Facebook user would be *confused* by Noom's ads.  Weight Watchers alleges that consumers "are likely to believe Weight Watchers is offering a new or updated program targeted to millennial consumers," Amend. Compl. ¶ 61, but this is a conclusory allegation with no explanation, and it is contradicted by every other aspect of these advertisements.

23

The advertisements are topped by prominent Noom banners, bearing the Noom logo and stating that the ad is "Sponsored" by Noom.  Amend. Compl.¶ 59.  The advertisements' images also bear a prominent Noom watermark.  The references to Weight Watchers appear in small, normal typeface, with the ® symbol after Weight Watchers' name.  The text moreover states that "millennials are calling" Noom "Weight Watchers® 2.0" or "Weight Watchers® for the 21st century"—statements that, taken literally, indicate that "millennials" view Noom as a distinct "upgrade" from the older service, Weight Watchers.

It is not plausible, in this context, to allege that Noom "'step[ped] over the line into a likelihood of confusion by using the senior user's mark too prominently or too often, in terms of size, emphasis, or repetition." *Int'l Info*, 823 F.3d at 165 (quoting McCarthy § 23:11).  Rather, Noom's mockery of its rival is classic "nominative fair use."

## IV.     Weight Watchers' Remaining Claims Should Be Dismissed for the Same Reasons

Weight Watchers' "unfair competition" claims (Counts Three and Six) should be dismissed for the same reasons as the false-advertising and trademark-infringement claims already discussed.  *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272-73 (E.D.N.Y. 2014) (federal and New York "unfair competition" claims are "duplicative" of federal false-advertising and trademark-infringement claims).

Weight Watchers' claims under N.Y. Gen. Bus. Law §§ 349 and 350 (Counts Four and Five) should also be dismissed for the same reasons given above.  *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am.*, *Inc.,* 307 F. Supp. 3d 260, 302 (S.D.N.Y. 2018) (standards under section 349 are "substantially the same" as Lanham Act); *Avon Prods., Inc. v. S.C. Johnson & Son, Inc*., 984 F. Supp. 768, 800 (S.D.N.Y. 1997) (same).  Moreover, Weight Watchers has not alleged "a specific and substantial injury to the public

24

interest, over and above ordinary trademark infringement." *Car-Freshner Corp. v. D & J Distrib. & Mfg., Inc.*, No. 14-CV-391 PKC, 2014 WL 3900564, at *5 (S.D.N.Y. Aug. 8, 2014).

In the alternative, the Court should decline supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c)(3). Weight Watchers does not allege diversity jurisdiction.

## CONCLUSION

For the reasons stated herein, Noom respectfully requests the Court dismiss with prejudice Weight Watchers' Amended Complaint in its entirety.

Respectfully submitted,

*/s/ Steven M. Shepard*

SUSMAN GODFREY L.L.P.
Steven M. Shepard
Lucas E. Issacharoff
1301 Avenue of the Americas, 32nd Fl.
New York, New York 10019-6023
sshepard@susmangodfrey.com
lissacharoff@susmangodfrey.com

*Attorneys for Defendant Noom, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 12, 2019, I caused the foregoing document to be served on all counsel of record by ECF.

<u>  */s/ Steven M. Shepard*   </u>
Steven M. Shepard