UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
WEIGHT WATCHERS INTERNATIONAL,
INC.,

                        Plaintiff,                        18-cv-9637 (PKC)

      -against-                              OPINION
                                                    AND ORDER

NOOM, INC.,

                        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendant Noom, Inc. ("Noom") markets and sells weight-loss services based on nutrition and lifestyle advice dispensed through a mobile app. In 2018, Noom ran several advertisements on Facebook and aired at least one television commercial. Some of those ads mentioned plaintiff Weight Watchers International, Inc. ("Weight Watchers") by name. Broadly characterized, these advertisements described Noom as offering effective, modern weight-loss services that compared favorably to those of Weight Watchers.

        Weight Watchers commenced this action in October 2018. It contends that Noom's advertisements made false statements about both Noom and Weight Watchers. Among other things, Weight Watchers alleges that Noom falsely asserted that its plans facilitate permanent weight loss, whereas Weight Watchers customers follow less-effective "crash" diets; that a consumer will lose more weight with Noom than through Weight Watchers; and that Noom's methods are backed up by extensive scientific research. Weight Watchers also alleges that when it referred to "Weight Watchers" by name, Noom infringed the Weight Watchers trademark, leading consumers to incorrectly believe that Weight Watchers and Noom are

affiliated. Weight Watchers brings claims of false advertising, trademark infringement and unfair competition under the federal Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and similar claims under the New York General Business Law and New York common law.

Noom moves to dismiss the Amended Complaint (the "Complaint") pursuant to Rule 12(b)(6), Fed. R. Civ. P. It urges that the disputed advertisements contain statements of opinion and puffery that are not actionable under the Lanham Act. As to the trademark infringement and unfair competition claims, Noom argues that its use of the Weight Watchers mark falls within the doctrine of "nominative fair use," and that the Complaint therefore fails to state a claim for relief.

For the reasons that will be explained, the Court concludes that the Complaint has plausibly alleged a false advertising claim under the Lanham Act and New York General Business Law section 350 as to Noom's statement that its service is "backed by 8 years of research and proven to be effective by several medical journals." (Compl't ¶ 54.) Noom's motion to dismiss is otherwise granted.

BACKGROUND.

Weight Watchers is a commercial provider of weight-loss services and describes itself as "the most recognized and trusted brand in the industry." (Compl't ¶ 11.) It offers monthly subscription plans that are intended to guide subscribers' eating habits and physical activity. (Compl't ¶ 12.) The plans use a points-based system to set a nutritional "budget" based on calories, fat, sugar and protein. (Compl't ¶ 13.) Weight Watchers customers participate in plans through a website or mobile app, in-person workshops, and/or one-on-one calls and messages with a personal coach. (Compl't ¶¶ 14-16.) Weight Watchers states that it has had more than $1 billion in sales in each of the last five years. (Compl't ¶ 25.)

Weight Watchers alleges that it has continuously used certain trademarks in commerce since its founding in 1963, including a service mark for "Weight Watchers" itself, as well as later-adopted marks such as "WW" and marks for its "POINTS Weight Loss System." (Compl't ¶¶ 18-21.)  Weight Watchers identifies eight marks registered with the United States Patent and Trademark Office ("USPTO").  (Compl't ¶ 21 & Ex. A.)

According to the Complaint, Noom provides weight-loss services through a mobile app.  (Compl't ¶ 30.)  In the summer of 2018, Noom launched a digital marketing campaign on Facebook that prominently featured the question, "You aren't still on MySpace, so why are you doing Weight Watchers®?" and the phrase, "A healthier you in 16 weeks." (Compl't ¶ 31.)  Another advertisement featured the quote, "I've tried Weight Watchers and nothing has worked!"  (Compl't ¶ 39.)  Other Noom ads featured phrases like, "Lose weight for good," and, "Most weight loss programs are based on unsustainable dieting" and "crash dieting." (Compl't ¶¶ 43, 45.)

Weight Watchers alleges that Noom's advertisements conveyed a false message that Noom's weight-loss plans are effective and result in permanent weight-loss, while implying that Weight Watchers customers will re-gain lost weight and/or receive an ineffective weight-loss program.

Weight Watchers also asserts that certain of Noom's advertisements are likely to mislead consumers into believing that Noom is sponsored by or otherwise affiliated with Weight Watchers.  (Compl't ¶¶ 59-65.)  Certain of Noom's Facebook ads included the text, "The program that millennials are calling Weight Watchers® 2.0" and "Millennials are calling it Weight Watchers® for the 21st century."  (Compl't ¶ 59.)  The Complaint asserts that these

statements are likely to result in consumer confusion about Noom's affiliation with Weight Watchers. (Compl't ¶ 60.)

The Complaint brings claims of false advertising, trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1125(a) and 1114(1). (Compl't ¶¶ 66-88.) It also brings claims of false advertising and unfair and deceptive trade practices under New York General Business Law sections 349 and 350, and one claim of common-law unfair competition under New York law. (Compl't ¶¶ 89-109.)

RULE 12(b)(6) STANDARD.

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

"[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'" Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)). A court reviewing a Rule 12(b)(6) motion "does not ordinarily look

beyond the complaint and attached documents in deciding a motion to dismiss brought under the rule." Id. A court may, however, "consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'" Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

DISCUSSION.

    I.    The False Advertising Claims Are Dismissed in Part.

        A.    The Lanham Act's Prohibition Against False Advertising.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits any person "in commercial advertising or promotion, [from] misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ." To state a false advertising claim under section 43(a), a plaintiff must plausibly allege "that the statement in the challenged advertisement is false." Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 255 (2d Cir. 2014).

Falseness may be established through one of two means: "'that the challenged advertisement is literally false, i.e., false on its face,' or 'that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.'" Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 112 (2d Cir. 2010) (quoting Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 (2d Cir. 2007)). An impliedly false message "leaves 'an impression on the listener or viewer that conflicts with reality.'" Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH, 843 F.3d 48, 65 (2d Cir. 2016) (quoting Time Warner Cable, 497 F.3d at 153). When a plaintiff alleges that an advertisement is impliedly false, "[i]t is not for the judge

to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive." Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992). Instead, "[t]he question in such cases is – what does the person to whom the advertisement is addressed find to be the message?" Id. (quotation marks omitted). A statement is impliedly false "when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." Church & Dwight, 843 F.3d at 66 (quotation marks omitted).

Whether based on a literal or implied falsehood, "the injuries redressed in false advertising cases are the result of public deception." Tiffany (NJ) Inc., 600 F.3d at 112 (quotation marks omitted). In addition to falsity, a plaintiff must plausibly allege that the defendant "misrepresented an inherent quality or characteristic of the product," that the false statement was made in interstate commerce, and that the plaintiff was injured. Merck, 760 F.3d at 255 (quotation marks omitted).

A defendant cannot be liable for advertisements that amount to puffery. Time Warner Cable, 497 F.3d at 159. Statements of puffery are subjective claims about products that "cannot be proven either true or false." Id. (quotation marks omitted). The Second Circuit explained:

> Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language. Such sales talk, or puffing, as it is commonly called, is considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer. The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific.

Id. (quotation marks omitted). Puffery may occur in the form of "a general claim of superiority over comparable products," or, alternatively, as "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying." Id. at 160 (quotation

marks omitted).  For example, the Second Circuit concluded that a satellite TV company engaged in puffery when it favorably compared its broadcast resolution quality to an "unwatchably blurry, distorted, and pixelated" television image imputed to a cable TV competitor.  Id.

The Lanham Act also does not provide relief for advertisements that are based on statements of opinion.  See Groden v. Random House, Inc., 61 F.3d 1045, 1051 (2d Cir. 1995) ("[S]tatements of opinion are generally not the basis for Lanham Act liability."); ONY, Inc. v. Cornerstone Therapeutics, Inc., 720 F.3d 490, 496 (2d Cir. 2013) (noting First Amendment implications of extending Lanham Act liability to statements of pure opinion).  Thus, a statement that "could not reasonably be seen as stating or implying provable facts" will not subject a defendant to Lanham Act liability.  Groden, 61 F.3d at 1051.

B.  The Allegedly False Advertisements Cited in the Complaint.

The Complaint identifies seven categories of allegedly false advertisements from Noom.  The Court considers each of them in turn.

1.  ". . . so why are you doing Weight Watchers®?"

The Complaint identifies six ads that Noom ran on Facebook in the summer of 2018, all of which featured the heading, "You aren't still on MySpace, so why are you doing Weight Watchers®?"  (Compl't ¶ 31.)  The Complaint includes screenshots of the ads, which included the text, "A healthier you in 16 weeks," followed by, "Join 45 million+ regular people learning to push past plateaus and tame temptation without starving or stressing out.  Noom's 16-week course gives you the behavior change tools to forgive, practice, and (finally) stick to a

plan."[1] (Compl't ¶ 31 & Ex. B, Image 5.) The ads varied in the additional phrases that they

featured, including, "A smarter way to lose weight," "noom. Weight loss for millennials" and

"Lose Nothing But the Weight." (Id.)

The Complaint alleges that these advertisements impliedly conveyed a false

message that consumers would lose more weight in 16 weeks using Noom that they would using

Weight Watchers, or, alternatively, that Weight Watchers customers would lose no weight in 16

weeks. (Compl't ¶¶ 32-35.)

This is a strained reading of the advertisements. "Subjective claims about

products, which cannot be proven either true or false, are not actionable under the Lanham Act."

Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995) (quotation marks omitted); accord Time

Warner Cable, 497 F.3d at 159. An advertisement is non-actionable puffery when it makes "a

general claim of superiority over comparable products that is so vague that it can be understood

as nothing more than a mere expression of opinion." Id. at 160 (quotation marks omitted).

The advertisements mention Weight Watchers only in the context of comparing it

to MySpace, a once-popular social-media site. The comparison of Weight Watchers to MySpace

suggests that Weight Watchers has become outdated and that Noom is a more contemporary,

modern alternative. It does not impliedly or literally state that a Noom customer will lose more

weight in 16 weeks than a Weight Watchers customer. The suggestion that Weight Watchers is

akin to MySpace and that consumers should therefore choose Noom is a "claim of superiority"

that is "so vague" that any reasonable consumer would recognize it as an opinion. Time Warner

Cable, 497 F.3d at 160.

---

[1] As reproduced in the Complaint, many of the Facebook advertisements end in an ellipsis after the phrase "give you the behavior change . . . ." The full text of this portion of the advertisement, which is repeated in numerous ads, is included at Image 5 of a CD-ROM that was filed with the Complaint as part of Exhibit B. The Complaint does not urge that the ellipsis made the ads false or misleading.

Viewing the ad as a whole, its additional text does not plausibly support a false-advertising claim. The phrases, "A smarter way to lose weight" and "Weight loss for millennials" are consistent with the message that Noom is modern and contemporary, and do not imply that consumers will lose more weight through Noom than Weight Watchers. The phrase "A healthier you in 16 weeks" is broad, and the text immediately following states that Noom users will "push past plateaus and tame temptation . . . ." It makes no express reference to weight loss. Statements touting "[a] healthier you" and "push[ing] past plateaus" could plausibly be understood to describe subjective feelings of physical or mental well-being, and not just weight loss. Statements promoting a "healthier you" fall comfortably within the category of non-actionable puffery, and do not plausibly support a claim of false advertising. See, e.g., Time Warner Cable, 497 F.3d at 159.

The motion to dismiss the false advertising claim directed toward these advertisements is therefore granted.

2. <u>The Review of Sally W.</u>

Noom published an ad on Facebook that quoted from a reviewer identified as Sally W. (Compl't ¶ 36.) The review stated, "I have **lost more weight with Noom** in 5 weeks than I lost in 10 months on Weight Watchers." (<u>Id.</u>; emphasis in original.) That text is accompanied by an image of five stars, the style of which might appear in a typical online review. (<u>Id.</u>) The advertisement features what appears to be a stock photograph of a woman looking over her shoulder toward the camera. (<u>Id.</u>) The advertisement does not state where Sally W.'s review was originally posted.

The Complaint does not assert that this review is literally false: That is, Weight Watchers does not urge that Sally W. did not truthfully describe her own experience. Rather, the

Complaint asserts that the advertisement impliedly conveyed a false message that Sally W.'s experience is typical of what consumers will achieve using Noom, and left consumers with the false impression that Noom will cause customers to lose weight faster than if they had used Weight Watchers.  (Compl't ¶¶ 37-38.)

Weight Watchers does not plausibly allege a false advertising claim based on this ad.  The advertisement depicts what a reasonable consumer would understand to be a review from a single customer of Noom.  Sally W. is not identified as having special expertise in weight loss or some other status that would afford her special deference.  The Court takes judicial notice that customer reviews of businesses, products and services have become common on many websites and mobile apps, including Google, Facebook and Yelp.  Reviewers frequently express their views in strong, personal terms.

The Complaint does not allege any facts that would lead a reasonable consumer to conclude that Sally W.'s experience "is representative of what consumers generally will achieve with those programs . . . ."  (Compl't ¶ 37.)  The ad merely quotes from the type of customer review that has become common online.  There is no allegation that the review did not reflect Sally W.'s actual opinion, that she was compensated by Noom, or that Noom misleadingly edited the review.  The Complaint does not plausibly allege why this advertisement, viewed in context, would be construed by a consumer as quoting anything more than a single user's subjective experience with Noom.  Weight Watchers has not directed the Court to any authority that recognizes Lanham Act liability for such a review.

In urging that Noom's publication of this review is actionable, Weight Watchers relies on informal guidance that the Federal Trade Commission ("FTC") issued concerning the role of disclosures and disclaimers in ads that tout customer endorsements.  16 C.F.R. § 255.2.

The guidance was directed to the enforcement of section 5 of the FTC Act, 15 U.S.C. § 45, and not toward the Lanham Act.  See 16 C.F.R. § 255.0(a).  It states in relevant part:

> An advertisement containing an endorsement relating the experience of one or more consumers on a central or key attribute of the product or service also will likely be interpreted as representing that the endorser's experience is representative of what consumers will generally achieve with the advertised product or service in actual, albeit variable, conditions of use.  Therefore, an advertiser should possess and rely upon adequate substantiation for this representation.  If the advertiser does not have substantiation that the endorser's experience is representative of what consumers will generally achieve, the advertisement should clearly and conspicuously disclose the generally expected performance in the depicted circumstances, and the advertiser must possess and rely on adequate substantiation for that representation.

Id. § 255.2(b).

The FTC's guidance includes illustrative examples of when additional disclosures or "adequate substantiation" should accompany a consumer endorsement.  For instance, an ad touting successful baldness treatments should be backed by scientific support, and customer testimonials that describe "remarkable" results should be labeled as not being typical.  See id. § 255.2(c).  The guidance notes that when testimonials describe personal, subjective opinions from a small number of people, consumers are more likely to understand such statements as subjective.  See id.

While this guidance was not issued for the Lanham Act, "courts have held that a 'plaintiff may and should rely on FTC guidelines as a basis for asserting false advertising under the Lanham Act.'"  Casper Sleep, Inc. v. Mitcham, 204 F. Supp. 3d 632, 638 (S.D.N.Y. 2016) (Rakoff, J.) (quoting Manning Int'l Inc. v. Home Shopping Network, Inc., 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001)); see also B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 168 F.3d 967, 973 (7th Cir. 1999) (although it does not carry "authoritative weight," "as the administrative agency charged with preventing unfair trade practices, the [FTC's] assessment of what constitutes

deceptive advertising commands deference from the judiciary.").  At the same time, there is no private right of action under the FTC Act, and its disclosure obligations do not apply to Lanham Act claims.  See Lokai Holdings LLC v. Twin Tiger USA LLC, 306 F. Supp. 3d 629, 639-40 (S.D.N.Y. 2018) (failure to follow FTC endorsement-disclosure guidelines is not actionable under the Lanham Act) (Carter, J.); Casper Sleep, Inc., 204 F. Supp. at 638 ("§ 43(a) of the Lanham Act does not impose an affirmative duty of disclosure."); L & F Prod. v. Procter & Gamble Co., 845 F. Supp. 984, 1001 (S.D.N.Y. 1994) ("[W]hat constitutes false advertising under the FTC Act does not necessarily constitute a violation of § 43(a) of the Lanham Act.").

   The Court affords some weight to the FTC guidance cited by Weight Watchers, but concludes that it does not support a plausible false-advertising claim directed to the review of Sally W.  As reflected in the guidance and its illustrative examples, the FTC was concerned with the disclosures and disclaimers that accompany product testimonials.  See 16 C.F.R. § 255.2.  The Lanham Act does not have such a disclosure requirement, and the subject of the FTC guidance does not otherwise overlap with the Lanham Act's prohibition against false advertising.

   The motion to dismiss the false advertising claim directed toward the Sally W. review is therefore granted.

### 3.  "Lose Weight for Good"

   Noom published an advertisement on Facebook that included a bold-faced header stating, "Lose weight for good."  (Compl't ¶ 43.)  A different ad contained the bold-faced header, "Permanent weight loss in the palm of your hands."  (Compl't ¶ 39.)  For both ads, the text immediately following stated:  "Join 45 million+ regular people learning to push past plateaus and tame temptation without starving or stressing out.  Noom's 16-week course gives you the behavior change tools to forgive, practice, and (finally) stick to a plan."  (Compl't ¶¶ 39, 43 &

Ex. B Ad 9, 10, 5.)   Two of these ads also include the text, "A 4-month program with Noom costs about the same as a new pair of shoes.  Don't you think that's worth the life-changing results?"  (Compl't ¶¶ 39, 43.)

According to the Complaint, the advertisements were false and misleading because "[i]t is not possible to lose weight for good simply by using [Noom] for only 16 weeks." (Compl't ¶ 44.)  The Complaint also asserts that the advertisements convey a false message "that consumers will not regain the weight they lose by using Defendant's Program for only 16 weeks, even after they stop using it."  (Compl't ¶ 41.)

In moving to dismiss the claim, Noom urges that no reasonable consumer would believe that the Noom course would result in permanent weight loss regardless of the consumer's behavior.

Viewing the ads in their entirety, the Complaint does not plausibly allege that they are literally or impliedly false.  The ads tout the prospect of losing weight "for good" through "behavior change tools" that are taught during a sixteen-week course.  The Complaint does not plausibly allege how a reasonable consumer encountering the ads as a whole would conclude that Noom guarantees permanent, lifelong weight-loss simply by subscribing to Noom.  The ads tout a program to "push past plateaus and tame temptations" without stress.  (Compl't ¶¶ 39, 43 & Ex. B Ad 5.)  These broad and commendatory descriptions of Noom constitute the type of puffery described by Time Warner Cable, 479 F.3d at 159.

The motion to dismiss the false advertising claim directed toward these advertisements is therefore granted.

4.  <u>The December 2018 Ads.</u>

In December 2018, Noom ran video two advertisements on Facebook that included the statements, "Most weight loss programs are based on unsustainable dieting," "Most weight loss programs are based on crash dieting," and a purported consumer stating, "I've tried Weight Watchers and nothing has worked." (Compl't ¶ 45 & Ex. B, Ads 11 and 12.)

According to the Complaint, the video advertisements conveyed the false messages that Weight Watchers used crash-dieting techniques and that the customers of Weight Watchers would regain any weight that they lost. (Compl't ¶¶ 46-47.)

In moving to dismiss the claim, Noom notes a twelve-second gap between the Complaint's statements referencing "crash" dieting and the subsequent statement referencing Weight Watchers. (Def. Mem. at 13-14.) The Complaint has annexed as Exhibit B a copy of all advertisements alleged to be false, and attached a CD-ROM that reproduces the ads in their native format, including the video advertisements. (Compl't Ex. B.) Weight Watchers's opposition memorandum also includes six screenshots of images from the ads, with the screen time listed for each image. (Opp. Mem. 14.) No party has urged that videos of the challenged advertisements are not properly considered on this Rule 12(b)(6) motion.[2]

The screenshots submitted by Weight Watchers consist of the following statements, with the times denoted:

- Most weight loss programs are based on crash dieting (0:03-0:05)
- Which is why the results DON'T last! (0:06-0:08)
- Meet Noom (0:08-0:09)
- No food is forbidden / Just 10 minutes a day / Keep the weight off (0:12-0:15)

_____

[2] On a Rule 12(b)(6) motion, the Second Circuit has considered video footage incorporated by reference in a complaint, but also noted that it has never definitively reached the issue of whether a video can be a "written instrument" that "is a part of the pleading for all purposes" under Rule 10(c), Fed. R. Civ. P. <u>Garcia v. Does</u>, 779 F.3d 84, 87 (2d Cir. 2015).

- "I've tried Weight Watchers and nothing has worked!" (0:16-0:18)
- "Noom has literally been life-changing!" (0:19-0:21)

(Opp. Mem. 14.)

Reviewing the ads in their video formats, their imagery varies slightly. Both begin with the statement, "Psychologists have reinvented weight loss." In Ad 11, the statement is accompanied by footage of a woman eating pasta, whereas Ad 12 shows a woman posing before a mirror. (Compl't Ex. B.) In Ad 11, statements about "unsustainable dieting" are shown with footage of a woman looking confidently in a mirror, while in Ad 12, the statements concerning "crash dieting" and short-lived results are superimposed against footage of a cake being sliced and served. (Id.) In both videos, after the 21-second mark, a woman states, "I've been on a diet for 30 years! But Noom is different!", with that text superimposed on the screen. (Id.) The ads then shows footage of a woman dancing, followed by the text, "Take the quiz to get your custom plan," then a list of "favorite activities" displayed on a smart phone. Video 12 ends with the phrase, "How much weight do you want to lose?" (Id.)

Viewing the advertisements in their entirety, based on the videos annexed at Exhibit B to the Complaint and the additional screenshots that Weight Watchers has submitted in opposition as the non-movant, the Complaint does not plausibly allege that Noom falsely described Weight Watchers as relying on unsustainable, crash-dieting techniques.

The phrase "I've tried Weight Watchers and nothing has worked!" is so vague and broad that it amounts to non-actionable puffery. The phrase "nothing has worked" could conjure various outcomes: It could reasonably suggest that the speaker cheated on the program, did not find the service compatible with her lifestyle, or regained weight once the program ended. The hyperbolic character of the statement "nothing has worked!" is underscored by the statement that immediately follows: "Noom has literally been life-changing!" An assertion that

"nothing has worked" with a competitor service, but that the advertiser's service "literally" changed the speaker's life, is classic puffery. Time Warner Cable, 497 F.3d at 159 ("Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language.") (quotation marks omitted); see also Cablevision Sys. Corp. v. Verizon New York Inc., 119 F. Supp. 3d 39, 53 (E.D.N.Y. 2015) ("to say that one's product is 'better' than a competitive product, without more specificity, could well define the concept of puffery.").

        The ads' earlier references to "crash" or "unsustainable" dieting and results that "DON'T last" do not make the claim more plausible. Those statements characterize unnamed weight-loss programs in broadly negative terms but do not impute particular methods to Weight Watchers. In Ad 11, the reference to "unsustainable dieting" is immediately preceded by footage of a woman eating pasta. In Ad 12, those statements appear on screen against the backdrop of a multi-layer chocolate cake slowly being sliced and served. "[A] district court must examine not only the words, but also the 'visual images . . . to assess whether [the advertisement] is literally false.'" Time Warner Cable, 497 F.3d at 159 (quoting S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001)). The imagery of a rich dessert alongside references to "crash dieting" and results that "DON'T last" make the statements more hyperbolic, similar to the "unwatchably blurry image" of poor television service that was disputed in Time Warner Cable, 497 F.3d at 160-61. A reasonable viewer would not plausibly conclude that the ads were referencing any actual Weight Watchers plan.

        Noom's motion to dismiss the Lanham Act false advertising claim directed to this advertisement is therefore granted.

5.  <u>"I yoyo dieted for years . . . ."</u>

In December 2018, Noom ran a television commercial on at least one cable network.  (Compl't ¶ 48.)  The Complaint quotes a transcript of the commercial as follows:

> I yoyo dieted for years.  I counted the points.  I followed the rules and it didn't help me long term.  I was just so tired of losing the weight and gaining it all back.  But I found something new.  It's called Noom.  It's not a diet.  It's a totally different personalized program that uses psychology and small goals to change your habits so that you can lose the weight and keep it off for good.  It's super easy to get started.  So what do you have to lose?  Visit Noom.com today and lose the weight for good.

(Compl't ¶ 49.)  Video of the commercial is also submitted as Exhibit B Ad 13 Video in the CD-ROM annexed to the Complaint.  The Complaint alleges that this advertisement impliedly conveyed a false message that the Weight Watchers program is based on diet alone.  (Compl't ¶ 50.)  According to the Complaint, Weight Watchers actually "urges members to set goals, change habits and embrace a healthy and active lifestyle . . . ."  (Compl't ¶ 51.)

The Complaint does not plausibly allege that the commercial conveyed an impliedly false message about the Weight Watchers program.  First, the commercial does not expressly refer to Weight Watchers.  Second, assuming that a reasonable consumer of weight-loss services understood the reference to "points" and "rules" to be directed toward Weight Watchers, the Complaint does not plausibly allege that the advertisement conveyed a message that Weight Watchers programs are "based on diet alone."  (Compl't ¶ 50.)  The phrase, "It's not a diet," as uttered in the commercial, is not plausibly alleged to describe Weight Watchers as being exclusively diet-based.  Rather, it identifies Noom as not being a diet.  The Complaint does not allege that any aspect of the imagery or editing that attributes any particular trait to the Weight Watchers regimen.

Noom's motion to dismiss the Lanham Act false advertising claim directed to this advertisement is therefore granted.

      6.  <u>The "Coach Heather" E-Mail.</u>

The Complaint describes an August 9, 2017 e-mail purportedly sent by "Coach Heather" from a noom.com address. (Compl't ¶ 52.) It had the subject line, "Why Weight Watchers failed you." (Compl't ¶ 52.) The body of the e-mail included the sentence, "Weight Watchers doesn't have an app which means it's not only more expensive, it costs more time making room for it in your life." (Compl't ¶ 52.) The Complaint alleges that this statement is literally false and that Weight Watchers "has had an app since at least 2009." (Compl't ¶ 53.)

Noom notes that the Complaint does not allege the public dissemination of the e-mail. "In this circuit, to constitute 'commercial advertising or promotion' under the Lanham Act, a statement must be: (1) 'commercial speech,' (2) made 'for the purpose of influencing consumers to buy defendant's goods or services,' and (3) 'although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.'" <u>Gmurzynska v. Hutton</u>, 355 F.3d 206, 210 (2d Cir. 2004) (quoting <u>Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.</u>, 314 F.3d 48, 56, 57-58 (2d Cir. 2002)). For purposes of the Lanham Act, "commercial speech" is speech that proposes a commercial transaction. <u>Id.</u>

The Complaint makes no allegations concerning the distribution of this e-mail. It alleges only that the e-mail "was sent . . . ." (Compl't ¶ 52.) The Complaint does not allege that the e-mail was distributed to consumers or to "the relevant purchasing public." <u>Gmurzynska</u>, 355 F.3d at 210. Because the Complaint alleges no facts about the distribution of this e-mail, it

fails to plausibly allege that it was "commercial advertising or promotion" under the Lanham Act.

Noom's motion to dismiss the Lanham Act false advertising claim directed to this e-mail is therefore granted.

7. <u>Claims about Noom's Research.</u>

The Complaint alleges that Noom has claimed on its website that its weight-loss program is "backed by 8 years of research and proven to be effective by several medical journals." (Compl't ¶ 54.) It quotes from an advertisement that states: "Learn the truth about bad habits and how to beat them, so you can stop dieting forever. Your course is backed by 8 years of research and proven to be effective by several medical journals." (Compl't ¶ 54.)

The Complaint alleges that this statement is false or misleading because the Noom program has not been subject to "randomized, controlled studies, and at least three of the studies relied upon by [Noom] are preliminary or pilot studies involving only small groups of people." (Compl't ¶ 55.) It alleges that in the absence of a randomized, controlled study that supports its efficacy claims, Noom's statements that its programs are "proven effective" are false and misleading. (Compl't ¶ 56.) Specifically, the Complaint alleges that no research "purports to address the objective, express statement that users 'lose weight for good.'" (Compl't ¶ 55.)

"To prove that an advertising claim is literally false, a plaintiff must do more than show that the tests supporting the challenged claim are unpersuasive. Rather, the plaintiff must demonstrate that such tests are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made." <u>McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.</u>, 938 F.2d 1544, 1549 (2d Cir. 1991) (quotation marks and citation omitted). Conclusions

drawn from non-fraudulent data about subjects of legitimate scientific disagreement "are not grounds for a claim of false advertising under the Lanham Act." <u>ONY, Inc.</u>, 720 F.3d at 498.

In moving to dismiss this claim, Noom raises arguments that are better suited to a motion for summary judgment or a trial. On the one hand, it urges that the ad's research-related statement is mere puffery because whether Noom is "effective" cannot be measured. (Def. Mem. at 18.) At the same time, the ad itself expressly stated that Noom was "proven to be effective by several medical journals," and Noom urges that Weight Watchers raises only a methodological "quibble" over whether studies show Noom to be effective. (<u>Id.</u> at 19.) Noom submits eight articles that were published in different health journals, which, it argues, "demonstrate that Noom is 'effective' at promoting short- and long-term weight loss." (<u>Id.</u> at 20.) It urges that the Court take judicial notice of the contents of these articles in order to conclude that Noom's advertisement truthfully conveyed the existence of published research about its effectiveness. (Docket # 28.)

These arguments are not properly resolved on a Rule 12(b)(6) motion. The Complaint alleges that Noom has falsely claimed that its methods have been "proven effective." (Compl't ¶ 56.) It alleges that Noom has relied on research that does not meet threshold standards for reliability. (Compl't ¶ 55.) The Court is unable to resolve at the pleading stage whether the research submitted by Noom proves the effectiveness of its weight-loss programs, whether that research is reliable, or whether the journals publishing the research are considered credible.

Noom's motion to dismiss the Lanham Act false advertising claim directed to this advertisement is therefore denied.

II.      The Lanham Act Trademark Infringement and Unfair Competition Claims Are Dismissed.

The Complaint brings claims of trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a). (Compl't ¶¶ 59-64, 74-88.) It alleges that Noom's unauthorized use of the "Weight Watchers" mark has caused likely consumer confusion about the source of the ads and led consumers to mistakenly believe that Weight Watchers approved of or sponsored Noom's services. (Compl't ¶¶ 81-88.) For the reasons that will be explained, these claims are dismissed.

Weight Watchers has registered four service marks with the USPTO for the term "Weight Watchers." (Compl't ¶ 21 & Ex. A.) Its mark registered in 1968 was for "planning, executing and supervising diet programs by means of group meetings, courses relating to diet and nutrition, and the distribution of literature . . . ." (Compl't Ex. A.) Later marks have been issued for computer-based and entertainment-based diet-management services. (Id.)

The Complaint includes the screenshots of two Noom ads, one of which includes the text, "The program that millennials are calling Weight Watchers® 2.0" and a second stating, "Millennials are calling it Weight Watchers® for the 21st century." (Compl't ¶ 59.) Both ads are identified as "Sponsored" by Noom. (Compl't ¶ 59.) A stylized, lowercase "noom." logo appears in the ads' images. (Compl't ¶ 59.)

The Complaint alleges that these advertisements are likely to cause consumers to believe that Noom is a Weight Watchers service, or that Weight Watchers sponsors or endorses Noom. (Compl't ¶¶ 60-61.) It asserts that Weight Watchers has registered "Weight Watchers" marks with the USPTO and that Noom intended to benefit from the marks' goodwill. (Compl't ¶¶ 75, 78.)

Noom urges that its use of the Weight Watchers name is "nominative fair use," and that the Complaint therefore fails to allege trademark infringement or unfair competition. "The doctrine of nominative fair use allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or affiliation." Tiffany (NJ) Inc., 600 F.3d at 102 (alterations and internal quotation marks omitted). In other words, "a defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant." Id. at 102-03.

In determining whether a defendant's use of a mark falls within the category of nominative fair use, courts look to the eight-factor balancing first adopted by Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961), plus three additional factors specific to nominative fair use. See Int'l Info. Sys. Security Certification Consortium, Inc. v. Security University, LLC, 823 F.3d 153, 168 (2d Cir. 2016). In applying this test, the Second Circuit has observed "that many of the Polaroid factors are a bad fit" for a nominative fair use analysis because they are directed toward confusion over the source of products, as opposed to sponsorship or endorsement. Id. at 168, 165. It stated that while there was "no reason to replace the Polaroid test" where a defendant raises nominative fair use, Second Circuit precedent has "repeatedly emphasized that the Polaroid factors are non-exclusive." Id. at 168.

The eight Polaroid factors that guide an infringement analysis are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective

quality of the products; and (8) sophistication of consumers in the relevant market.

Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009). These eight factors go toward whether "the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods." Id. at 114. The three additional factors to be considered in a claim involving nominative fair use are:

> (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services.

Int'l Inf. Sys., 823 F.3d at 168.

The Court considers each factor in turn.

Strength of the trademark. The Complaint characterizes the Weight Watchers mark as well known and as having been used in commerce since 1963. (Compl't ¶¶ 18, 29.) It alleges that Weight Watchers spends substantial sums to promote its products and receives unsolicited media coverage about the company. (Compl't ¶¶ 24, 26, 27.) The Complaint plausibly alleges that the Weight Watchers mark is strong.

Similarity of the marks. "Weight Watchers" and "Noom" are dissimilar marks. Standing alone, a reasonable consumer would not plausibly confuse the two.

Proximity of the products. Both Weight Watchers and Noom market and provide weight-loss services that purport to guide their customers toward healthy lifestyle choices. Their products are head-to-head competitors in the weight-loss market.

Likelihood of bridging the gap.  Because the parties are already commercial competitors, this factor does not apply.

Evidence of actual consumer confusion.  The Complaint does not allege incidents of actual consumer confusion.

Evidence of bad faith.  The Complaint alleges that Noom's "prominent" use of the Weight Watchers mark "is a clear and deliberate attempt to trade upon Weight Watchers' valuable reputation and goodwill."  (Compl't ¶ 63.)  The Complaint does not identify additional evidence of bad faith.  The Court separately notes that the advertisements reproduced in the Complaint are identified as having been sponsored by Noom, and contain a "noom." logo as part of their imagery.  (See, e.g., Compl't ¶ 59.)

Respective quality of the products.  Weight Watchers does not expressly allege a difference in the respective quality of the products.  However, the Complaint does describe different levels of Weight Watchers subscription services and the availability of one-on-one consultations, in contrast to Noom's program, which is exclusively app-based.  (Compl't ¶¶ 11-17, 30.)  It also characterizes the Weight Watchers marks as associated with "high reputation . . . in the public mind."  (Compl't ¶ 29.)  No allegation is made as to Noom's quality.

Consumer sophistication.  The Complaint does not allege the level of sophistication among consumers of Weight Watchers or Noom.

Of the eight Polaroid factors, the strength of the Weight Watchers mark and the competitive proximity of the products most strongly weigh in favor of the likelihood of consumer confusion as to the source of Noom's services.  The remaining factors have not been alleged or are neutral as to the likelihood of consumer confusion.

As the Second Circuit noted, however, the <u>Polaroid</u> factors are an imperfect fit when a defendant invokes nominative fair use, and three additional factors must be considered. <u>Int'l Inf. Sys.</u>, 823 F.3d at 168.

On the first <u>International Information</u> factor, a court should consider "whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark." <u>Id.</u> The disputed advertisements claim that "millennials are calling" Noom either "Weight Watchers® 2.0" or "Weight Watchers® for the 21st century." (Compl't ¶ 59.) It would not be possible to refer to Weight Watchers without its mark – the name "Weight Watchers" itself. This factor weighs in favor of nominative fair use.

The second <u>International Information</u> factor looks "whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service." 823 F.3d at 168. Courts should consider whether the alleged infringer "stepped over the line into a likelihood of confusion" by using a mark "too prominently or too often, in terms of size, emphasis or repetition." <u>Id.</u> (quotation marks omitted). Here, the Weight Watchers mark appears once, in a sentence that runs above an image. The ads include no additional marks or design elements owned by Weight Watchers. Noom's reference to Weight Watchers also includes the "®" symbol, which identifies the term as a registered trademark. That the use of the mark is limited to one mention of the company name weighs in favor of nominative fair use.

The third <u>International Information</u> factor considers "whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services." 823 F.3d at 168. In

reviewing this factor, "courts must not . . . consider only source confusion, but rather must consider confusion regarding affiliation, sponsorship, or endorsement by the mark holder." Id. at 169. Here, the text of Noom's advertisements does not plausibly "suggest sponsorship or endorsement" of Noom by Weight Watchers. The ads assert that "millennials are calling" Noom "Weight Watchers® 2.0" or "Weight Watchers® for the 21st century." (Compl't ¶ 59.) These phrases suggest that a demographic of consumers has compared Noom to Weight Watchers and perceives Noom to be more contemporary. While such assertions may or may not be accurate, the ads do not suggest that Weight Watchers has endorsed or sponsored Noom: they assert that Noom is a different and modern alternative to Weight Watchers.

Having reviewed the eight Polaroid factors and the additional three factors explained by International Information, the Court concludes that the Complaint does not plausibly allege a claim of trademark infringement. The Noom advertisements use the Weight Watchers mark to make a comparative claim about the services of Noom and those of Weight Watchers. While the accuracy of that comparison may be disputed, a reasonable consumer encountering the ads would not perceive them to claim that Weight Watchers is the source of Noom's services, or that Weight Watchers is affiliated with or endorses Noom. The advertisements are expressly posted by Noom, a "noom." logo appears in each of the advertisements, and Weight Watchers is invoked once in the text, with a negative connotation that its services are outdated.

Because the Complaint does not plausibly allege that a consumer would be confused as to the source, affiliation or sponsorship of Noom's services, Weight Watchers's claims of trademark infringement and unfair competition under the Lanham Act are dismissed.

III.     The Motion to Dismiss the New York Law Claims Are Granted in Part
         and Denied in Part.

In addition to the three Lanham Act claims, the Complaint brings claims of false advertising under New York General Business Law section 350; unfair and deceptive trade practices under New York General Business Law section 349; and common-law unfair competition.  (Compl't ¶¶ 89-109.)

"GBL 349 declares deceptive acts and practices unlawful and section 350 declares false advertising unlawful.  The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to Section 349.  The elements of a cause of action under these statutes are that: (1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct."  Denenberg v. Rosen, 71 A.D.3d 187, 194 (1st Dep't 2010) (quotation marks and internal citation omitted).

While the elements for alleging false advertising and infringement under the General Business Law are otherwise similar to Lanham Act claims, the section 349 threshold "is actually higher, as there must be 'specific and substantial injury to the public interest over and above the ordinary trademark infringement . . . .'"  Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc., 307 F. Supp. 3d 260, 302 (S.D.N.Y. 2018) (Nathan, J.); see also Naked Cowboy v. CBS, 844 F. Supp. 2d 510, 518 (S.D.N.Y. 2012) ("The standards under [GBL 349 and 350] are substantially the same as those applied to claims brought under Section 43(a) of the Lanham Act.") (Jones, J.).

For the reasons already explained, Noom's motion to dismiss the false advertising claim under GBL 350 is granted to the same extent as the Lanham Act false advertising claim is dismissed, but otherwise denied.  Neither party urges that any different standard or factual

allegations should be considered as to the false advertising claim brought under GBL 350. The Court therefor concludes that Noom has plausibly alleged a false advertising claim under section 350 as to the advertisements touting Noom's support in scientific research and medical journals.

For the reasons already explained, the GBL 349 claim of unfair competition and trademark infringement is dismissed in its entirety. The claim is separately dismissed because the Complaint does not plausibly allege a specific and substantial injury to the consuming public, beyond the purported infringement of the Weight Watchers mark. See Alzheimer's Ass'n, 307 F. Supp. 3d at 302.

Similarly, "[t]he elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." ESPN, Inc. v. Quiksilver, Inc., 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) (McMahon, J.); accord C=Holdings B.V. v. Asiarim Corp., 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013) ("An unfair competition claim under New York common law requires all the elements of a Lanham Act unfair competition claim plus a showing of bad faith.") (Sullivan, J.). For the reasons already explained as to the Lanham Act trademark and unfair competition claims, the Complaint's common-law unfair competition claim is dismissed in its entirety.

CONCLUSION.

The Complaint plausibly alleges violations of the Lanham Act (Count One) and section 350 of the New York General Business Law (Count Four) as to ads claiming that Noom's program is backed by scientific research and "proven" by medical journals. The motion to dismiss is therefore DENIED as to these claims, but GRANTED as to all other claims.

The Clerk is directed to terminate the motion. (Docket # 26.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       August 19, 2019